JjiPLOTKIN, J.
Willmoth Walker was convicted of manslaughter, a violation of La. R.S. 14:31, and was sentenced to 80 years imprisonment at hard labor to run consecutively with any other sentence imposed, with credit for time served. He has appealed his conviction, asserting three assignments of error. We affirm for the reasons set forth below. STATEMENT OF THE CASE
Willmoth Walker was indicted on August 17, 1995, for the second-degree murder of Donna Pitt, a violation of La. R.S. 14:30.1. At his arraignment on August 21, 1995, he entered a plea of not guilty. On October 30, 1997, a twelve-member jury convicted him of manslaughter. That same day the State filed a multiple bill of information to which the defendant entered a plea of not guilty. On November 3, 1997, the court adjudged the defendant a second felony offender. On December 16, 1998, the court sentenced the defendant to eighty years, with credit for time served, the sentence to run consecutively with any other sentence imposed.
|,STATEMENT OF FACT
At approximately 3:00 a.m. on March 2, 1995, Detective Carlton Lawless was dispatched to the 300 block of S. Prieur Street to investigate the scene of a homicide. When he arrived at the scene, Lawless observed the nude body of Donna Pitt lying in the street. He canvassed the area for witnesses and evidence, and discovered a surveillance camera mounted on a nearby building. The portion of the surveillance tape shot during the early morning hours of March 2, 1995, captured a white tractor from an 18-wheeler truck stop in the middle of the 300 block of S. Prieur for approximately thirty seconds, and then drive away. After interviewing the victim’s family and friends, Lawless contacted various temporary labor services, and learned that the defendant was hired by a local moving company as a tractor trailer driver. Lawless then located the white Ryder truck the defendant drove on March 1, and 2, 1995, and re-enacted the sequence of events captured on the surveillance tape to verify that the truck was the same vehicle shown on the tape. Next, his investigation led him to the New Travel Inn and Deborah Lewis, the motel’s night manager, and Robert Good, a resident of the motel. Mr. Good identified the defendant and the truck from photographs as having been at the motel the night of March 1, 1995. After speaking with Ms. Lewis, Lawless prepared an arrest warrant for the defendant for the second-degree murder of Donna Pitt.
Robert E. Williams, Jr., testified that he was employed as supervisor with Crescent City Moving and Storage Company on March 1, 1995. At that time, the defendant was employed by Crescent City Moving as a truck driver and drove a Ryder truck. The last conversation Williams had with the defendant concerned ^returning the Ryder truck, and whether the defendant needed transportation home after returning the truck. The defendant declined Williams’ offer of a ride home.
Ms. Shultoni Parker, records custodian at Task Force Temporary Services, verified that Crescent City Movers employed the defendant on March 1, 1995 from 11:00 a.m. to 7:30 p.m.
David Lewis, the records custodian for Ryder Truck Rental, testified that company records show that on March 1, 1995, Crescent City Moving rented a truck, and that the defendant picked up the truck at 12:24 p.m. that day. Ryder Truck Rental’s records further indicated that the truck was returned to Ryder on March 2, 1995, at 6:43 a.m.
Homicide detective Marco Demma testified that he first encountered the defendant on July 15, 1995, when he turned himself in on an outstanding warrant for his arrest. The defendant indicated that he wanted to give a statement, so Detective Demma, assisted by Sgt. Nicholas and Detective McCord, took the defendant’s recorded statement. The defendant waived his rights, and signed a rights of *221 arrestee form. At this point the State played the tape of the defendant’s statement in which he denied intentionally killing the victim. The defendant stated that he and the victim were acquainted from them neighborhood. On March 1, 1995, he met the victim on Carrollton Avenue at approximately 9:00 p.m. in his employer’s white truck. The pair decided to go to a Claiborne Avenue motel to have sex and smoke cocaine. During the course of their motel encounter, the victim began to demand more cocaine and money from the defendant. When he told her he did not have any more money or drugs, she began to hit and push him. Their fighting-continued for about thirty minutes, until he pushed her onto the bed, and began to strangle her. When he realized she was dead, he put her nude body pinto the truck, and drove to the 300 block of S. Prieur Street. He dumped her body in the street at approximately 3:00 or 4:00 a.m. He concluded his statement saying that he did not intend to kill the victim, only to protect himself from her. Detective Demma denied threatening, beating or coercing the defendant into making the statement.
Pamela Brumfield, the victim’s sister, testified that she knew the defendant from the neighborhood, and that she introduced him to her sister. She and her sister smoked cocaine with the defendant.
Jacqueline Landry testified that she knew the victim and the defendant from the neighborhood. She stated that she saw the victim and defendant together on several occasions. She testified that she saw the defendant driving a “big eighteen wheeler, white with [a] trailer on top,” on March 1,1995.
Dr. William Newman, a forensic pathologist, testified that he performed the autopsy on the victim’s body, and determined that she died of “asphyxiation secondary strangulation.” The victim’s bile and vitreous fluid tested positive for the presence of cocaine.
Officer Chana Pichón, a crime scene technician, explained that her duties entailed processing a crime scene for evidence. Generally, she photographs the scene, and then collects latent prints and other physical evidence. In this investigation, she vacuumed the interior of a white truck and collected a hair sample from the passenger seat of the truck. She also collected, and placed in three separate envelopes, fiber samples from two rooms at an Airline Highway motel.
Officer Joseph Tafaro, NOPD criminalist, testified as to the testing methods and analysis used to identify hair samples. He stated that he received hair samples from the victim and compared them to the hair sample retrieved by Officer Pichón. | ¡^Microscopic analysis of hair samples is not able to conclusively link a sample with a certain person; however, the testing is reliable enough to identify similarities which exclude all but a few persons. In this case, Officer Tafaro found that the similarities between the hair sample from the truck and the hair sample retrieved from the victim were close enough for him to conclude that the sample taken from the truck belonged to the victim or someone with identical hair, such as a family member. Officer Tafaro was unable to link to the victim any of the vacuumed fiber samples from the truck collected by Officer Pichón.
Robert Good, a security guard employed by New Orleans Private Patrol, testified that he was the security guard at the Travel Inn Motel on Airline Highway in March of 1995. He and his wife lived at the Travel Inn, and he saw the victim visit the motel with different men. On March 1, 1995, at about midnight, he saw the victim and the defendant arrive at the motel in a white truck, and rent a room. He did not see the victim and the defendant leave the motel. He identified the victim and the defendant from a photo line up arranged by Detective Lawless.
*222 ERRORS PATENT
A review for errors patent on the face of the record reveals none.
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the confession. He complains that officers beat the confession out of him.
The State bears the burden of proving beyond a reasonable doubt that a statement given by a defendant was voluntary and was not influenced by fear, | ^duress, intimidation, menace, threats, inducements, or promises. State v. Labostrie, 96-2003 (La.App. 4 Cir. 11/19/97), 702 So.2d 1194, writ denied, 98-0250 (La.6/26/98), 719 So.2d 1048. The State must prove that the accused was advised of his/her Miranda rights and voluntarily waived those rights in order to establish the admissibility of a statement made during custodial interrogation. Id. An express written or oral waiver of rights is strong proof of the validity of the waiver. Id. Whether a statement is voluntary is a fact question; thus, the trial judge’s ruling, based on conclusions of credibility and the weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling. Id.
At the hearing on the motion to suppress the confession, the defendant testified that during the interrogation his hands were cuffed behind his back. When he requested the right to speak with an attorney, one of the officers began to strangle him. Thereafter, as he denied any involvement in the homicide, another of the officers punched him thirteen times and hit him on his head with a book. Supplying reasons for the denial of the motion to suppress, the trial judge noted:
I have listened to the testimony of Detective McCord and Detective Demma and of ... Mr. Walker. And I’m placed in a situation where I have to judge the credibility of witnesses. And I will use the same factors that I instruct jurors on to make my determination as to whether these two detectives have lied today or whether Mr. Walker has lied because obviously that’s what it boils down to as it has to do with the motion to suppress [the] confession. And I frankly don’t believe you, Mr. Walker
The trial court did not err in denying defendant’s motion to suppress the confession. The transcribed statement shows that defendant was advised of his Miranda rights at the outset and that the defendant admitted signing a waiver of rights form. The'statement also shows that defendant was asked whether any |7promises, threats, or force had been used to make him give the statement, and defendant denied that they had. At trial, Detective Demma denied that he threatened or coerced defendant or that any promises were made. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 2
By this assignment of error, the defendant contends that the trial court erred in allowing the State to introduce other crimes evidence. Specifically, he argues prejudice in the State’s eliciting testimony from Pamela Brumfield and Jackie Landry relative to his use of cocaine with the victim and others.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lafleur, 398 So.2d 1074, 1080 (La.1981).
In this case, defense counsel posed the following query while cross-examining Jackie Landry:
*223 Q. Now I guess Ms. Landry you’re going to tell this jury that the reason— that the real reason they [the defendant and the victim] came to your house was to use drugs?
A. Yes.
As is readily obvious, the defendant complains of a self-inflicted error. As such he cannot now be heard to complain about his tactical misstep.
| ^However, in direct questioning of Pamela Brumfield, the State elicited her admission of drug use with the defendant, to which the defense objected.
Q. Ms. Brumfield, have you smoked coke with Willmoth Walker and your sister Donna Pitt, the three of you together?
A. Yes.
Arguably, the question was improper. Nevertheless, the erroneous admission of other crimes evidence is subject to harmless error review. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101. Harmless error exists where the guilty verdict actually rendered was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). The error is harmless considering the evidence of the defendant’s guilt. In his oral statement confessing that he killed the victim, the defendant also admitted that he used drugs the night of the victim’s death. The questioning about the defendant’s drug use did not prejudice him because the jury was aware of it from the defendant himself. Considering the overwhelming evidence of guilt, the jury’s verdict in this case was “surely unattributable” to the error and therefore harmless. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 3
In a final assignment of error, the defendant argues that his eighty-year sentence as a second offender is constitutionally excessive. He claims the court failed to consider his lack of “significant” criminal history, and instead, relied upon unsubstantiated prejudicial information contained in a pre-sentence investigation.
La. Const. Art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is |flwithin the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Brady, 97 1095, p. 17 (La .App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272; State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2984 at p. 10, 656 So.2d at 979, (citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988)). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Burton, 98-0096, pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74, 79, writ denied. 99-3383 (La.5/5/00) 761 So.2d 543.
A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2984 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. *224 Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the ^sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, writ denied, 1999-2632 (La.3/17/00), 756 So.2d 324.
The defendant herein was indicted for second-degree murder but was convicted of the lesser-included offense of manslaughter. He was sentenced as a second offender under the Habitual Offender Law, La. R.S. 15:529.1, to the maximum allowed under the statute — eighty years, without benefit of probation or suspension of sentence.
In sentencing the defendant, the judge referenced and adopted the findings of the pre-sentence report:
... I take particular note of it [pre-sen-tence report] ... In Subsection D, the agent notes as follows: This office has taken note that the subject has displayed a high-risk history with respect to public safety. The subject has been arrested and charged with seven, seven aggravated and/or assault crimes as noted in the criminal history. In addition, members of the subject’s, that’s Mr. Walker’s, family have expressed fear and suspicion of the subject’s character with respect to his ability to inflict .. .bodily harm. The agent goes on to report that attached to this report is a sworn statement given by Winifred Jar-rell, the subject’s sister to NOPD officers, Item Number C-40819-93 in which the subject is noted to have a tendency to fight women and is alleged to have confessed to her to the murder of Inez Wagner, the subject’s own grandmother; however, no ... charges regarding this allegation have been made against the subject.
The report goes on to list a lengthy history of arrests that date back to the 18th day of July 1990 when the gentleman was arrested for simply burglary of a residence. And that charge was refused. On March 26th, 1994, he was arrested by the NOPD and charged with extortion and aggravated assault. On August 31st, 1994, this charge was refused by the DA’s office and referred to Municipal Court when no further action was taken. On November the 19th, 1992, Mr. Walker was arrested by the Covington Police Department and charged with simple assault and aggravated battery. On March the 4th, 1994, these Incharges were nolle prosequied. On May the 8th, 1992, the subject was arrested by NOPD and charged with aggravated battery... On June 10th, 1992, this charge was refused due to the victim’s refusal to prosecute. As it relates to the prior conviction of theft over five hundred dollars in connection with case number 366-051-H, on September the 19th, 1995, Mr. Walker was found ... to be in violation of his probation as he failed to pay restitution to the victim, failed to pay fines and fees, and failed to report to his probation officer as required. And on September the 19th, Judge McKay made the original sentence of November the 19th, 1993 executory and recommended that he participate in the Impact Program ... however, he was statutorily ineligible for [that program] as he had a pending charge that would result if convicted in a sentence of in excess of 70 years.
[[Image here]]
I’ve considered along with the presen-tence investigation Article 894.1 of the Code of Criminal Procedure and I find as follows: that there’s an undue risk that during any period of a suspended sentence or probation that the defendant will commit another crime; that Mr. *225 Walker is in need of correctional treatment or a custodial environment that can best be provided by the Louisiana State Penitentiary and his commitment there for a lengthy period. I agree with the probation agent that a lesser sentence in this case would deprecate the serious nature of the defendant’s crime ... I found that the offender’s conduct during the commission of this offense manifested deliberate cruelty to the victim even after she had expired by dumping her nude body on the street of this City... I find that the dangerousness of this gentleman and the dangerousness of this offense, the viciousness of the crime, the harm done to the victim and her family outweigh any potential for this gentleman’s rehabilitation. I find that he poses a serious and substantial danger and risk to the public.
In this case, the trial judge considered the gravity of the crime and the defendant’s lengthy criminal history, his propensity for violence toward women and his deliberate cruelty to the victim. Considering the defendant’s criminal history and the facts of this case, the sentence was properly tailored to fit this particular defendant and this particular crime. The judge deemed the defendant a danger to society, and the sentence accomplishes the legitimate purpose of protecting society from further harm inflicted by the defendant. This assignment is without merit.
11 ¡.CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.

AFFIRMED.