WALTER J. ROTHSCHILD, Judge.
 

 12Pefendant, Michael D. Glaub, was indicted by a Jefferson Parish Grand Jury on March 20, 2008, and charged with second degree murder in violation of LSA-R.S. 14:30.1. He pled not guilty. On November 18, 2008, defendant proceeded to
 
 *1172
 
 trial, and a jury found him guilty of the lesser included offense of manslaughter, a violation of LSA-R.S. 14:31, on November 20, 2008.
 

 On February 13, 2009, defendant was sentenced to 40 years imprisonment at hard labor. On the same day, the State filed a multiple offender bill of information and defendant denied the allegations therein. At the multiple bill hearing on August 7, 2009, the trial court found that defendant was a second felony offender. The trial court vacated defendant’s original sentence and imposed an enhanced sentence of 80 years imprisonment at hard labor, without benefit of probation or suspension of sentence. Defendant appeals.
 

 FACTS
 

 At trial, Timothy Radecker and Brandon Jensen testified that they were with the victim, Kenneth Musgrove, on November 26, 2007. They went with Mr. Musgrove to defendant’s house to pick up the money Mr. Musgrove claimed ^defendant owed him for a broken window on Mr. Mus-grove’s truck. Mr. Radecker testified that Mr. Musgrove and defendant had previously argued regarding an incident in which the window of Mr. Musgrove’s truck was broken and that, in a fight between Mr. Musgrove and defendant, Mr. Mus-grove had punched defendant in the face, giving him a broken nose and swollen eyes. Mr. Jensen testified that, following the fight, Mr. Musgrove and defendant made “a little payment plan,” pursuant to which defendant agreed to give Mr. Musgrove money for the window. Mr. Jensen further testified that, after the agreement had been made, defendant said something to Mr. Musgrove on the phone which caused another argument and prompted Mr. Mus-grove to go to defendant’s house.
 

 When the three men arrived at defendant’s house, Mr. Musgrove exited the truck. Defendant was standing outside. Mr. Musgrove and defendant argued briefly. Mr. Radecker testified that when defendant suddenly walked inside, Mr. Mus-grove turned around and started to walk back around the front of his truck. At that point, defendant came out of the house and started shooting. Mr. Radecker recalled defendant firing eight to ten shots, and he testified that after defendant shot Mr. Musgrove, he looked at Mr. Ra-decker and Mr. Jensen and said “Ya’ll want some too?” Mr. Radecker testified that Mr. Musgrove’s back was turned toward defendant when he was shot and that no one 'in Mr. Musgrove’s truck had a weapon.
 

 Mr. Jensen’s testimony was similar to that offered by Mr. Radecker. Mr. Jensen testified that as Mr. Musgrove walked up the sidewalk, defendant ran inside. Mr. Jensen yelled a warning to Mr. Musgrove to run, and as Mr. Musgrove turned and started running, defendant came out the front door and started shooting. Mr. Jensen heard seven shots and indicated that Mr. Musgrove’s back was toward defendant when the shots were fired. Mr. Jensen thought they were going to 14defendant’s house to pick up money, and he did not hear Mr. Musgrove say he was planning on fighting or killing defendant. Mr. Jensen further testified that no one else at the scene had a firearm.
 

 Brandon LeLeaux testified that, while he and several others were at his house on the day of the shooting, he witnessed Mr. Musgrove speaking to defendant on the telephone. Following this conversation, Mr. LeLeaux spoke with defendant on the telephone and warned him to stay inside because he knew that Mr. Musgrove was going to defendant’s house. Shortly thereafter, Mr. Musgrove, Mr. Radecker and Mr. Jensen left Mr. LeLeaux’s home. When Mr. LeLeaux arrived at defendant’s house a short while later, Mr. Musgrove was dead.
 

 
 *1173
 
 Chantel Dufrene testified for the defense. She stated that Brandon LeLeaux told her that a weapon was removed from the deceased’s body after he was shot. Ms. Dufrene was not at the scene at the time of the shooting and did not contact the police regarding this information. Mr. Radecker, Mr. Jensen, and Mr. LeLeaux each testified that they did not see anyone remove a weapon from the deceased’s body. Two of defendant’s neighbors, Brooke Holeton and Marlene Heintz, both testified that they observed the scene from their houses and did not see anyone remove a weapon from the deceased’s body.
 

 Dr. Susan Garcia performed the autopsy on Kenneth Musgrove. She testified at trial that the cause of death was multiple gunshot wounds, primarily to the victim’s back and side. Dr. Garcia testified that at least one of the wounds appeared to have been sustained by a projectile that had lost most of its kinetic energy and was “certainly not indicative of a close range wound.” Dr. Garcia further testified that the victim sustained at least four wounds to the back, a couple of wounds to the side, and one to the abdomen. Thus, Dr. Garcia opined that “at some point in time, the decedent’s back was facing the firearm at the time of |sdischarge.” The toxicology report revealed the presence of several drugs in the victim’s system.
 

 Defendant testified at trial about the events leading up to, and surrounding, the shooting. A couple of nights before the shooting, he and Mr. Musgrove went to Boomtown Casino in Mr. Musgrove’s truck. When defendant ran out of money, he asked Mr. Musgrove for his keys so he could sleep in the truck. When Mr. Mus-grove returned and was unable to rouse defendant, he broke the window of his truck and, when defendant woke up, Mr. Musgrove told defendant “[y]ou know you’re going to have to pay for my window.” Defendant replied that he was not going to pay for the window because Mr. Musgrove broke it. In response, Mr. Mus-grove stated “well when we get back to Avondale, we’re going to fight.”
 

 Defendant testified that he and Mr. Musgrove stopped to pick up Mr. Radecker on their way to Mr. LeLeaux’s house, where he and Mr. Musgrove engaged in a physical altercation in which Mr. Mus-grove broke defendant’s nose. During the fight, Mr. Musgrove retrieved a trailer hitch from the back of his truck and broke one of defendant’s car windows. Defendant further testified that he and Mr. Mus-grove argued again later at his house, but the dispute was resolved when he agreed to pay Mr. Musgrove for the window once he got a job.
 

 Later that day, on his way home from the store, defendant passed by Mr. Le-Leaux’s house, where he saw Mr. Le-Leaux, Mr. Musgrove, Mr. Jensen and Mr. Carter. Defendant did not stop and went straight home. Shortly thereafter, defendant received a call from Mr. Carter, who asked why defendant did not stop at Mr. LeLeaux’s house. Mr. LeLeaux spoke with defendant and warned him that Mr. Musgrove was on his way to defendant’s house. After speaking with Mr. LeLeaux, defendant retrieved his stepfather’s gun.
 

 | (¿Defendant testified that when Mr. Musgrove arrived, he was “acting violent” and said if defendant would not fight, he would drag defendant out of his house. Defendant told Mr. Musgrove that he did not want any trouble. Mr. Musgrove stopped, turned around, and walked back to his vehicle. Defendant testified that it appeared to him that Mr. Musgrove was retrieving a weapon. When Mr. Musgrove turned back around, defendant reached inside, grabbed the gun, and shot Mr. Mus-grove. Contrary to the testimony offered by Mr. Radecker and Mr. Jensen, defendant claimed that Mr. Musgrove was com
 
 *1174
 
 ing toward him when he fired the first shot.
 

 When questioned about the shooting on cross-examination, defendant admitted that the deceased had never threatened him with a gun and that, although he assumed the deceased was returning to his vehicle to retrieve a weapon, he did not see a weapon in the deceased’s hands when he began shooting. Defendant further admitted that, even though he felt that he had to shoot the deceased, he could have called 911 when the deceased arrived at his house or he could have closed the door. Defendant also admitted that, when he shot the deceased, he fired every bullet in the gun and reloaded the weapon when he was finished. After reloading the weapon, defendant could have shot Mr. Radecker and Mr. Jensen, but he stated that he did not feel any threat from them. Defendant then called the police.
 

 DISCUSSION
 

 In his first assignment of error, defendant contends that the State failed to prove beyond a reasonable doubt that defendant did not act in self-defense and that the evidence presented by the State was insufficient to support the verdict of manslaughter. Defendant asserts that Kenneth Musgrove provoked the confrontation that ended in his death and that defendant’s actions were justified, |7because he was in fear for his life or great bodily harm. He argues that the evidence shows that he had no choice other than to shoot Kenny. Defendant contends that, because the State failed to eliminate the reasonable hypothesis of self-defense, reversal of defendant’s conviction is warranted.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 State v. Ortiz,
 
 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930,
 
 cert. denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998);
 
 State v. Scott,
 
 06-134, p. 12 (La.App. 5 Cir. 7/25/06), 939 So.2d 462, 470,
 
 writ denied,
 
 06-2133 (La.3/30/07), 953 So.2d 61. Under the
 
 Jackson
 
 standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.
 
 State v. Jones,
 
 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt.
 
 Id.
 
 at 7, 985 So.2d at 240.
 

 In the instant case, defendant was charged with second degree murder and convicted of manslaughter under LSA-R.S. 14:31.
 
 [1]
 
 Defendant does not deny that he shot and killed the victim, but he contends he acted in self-defense.
 

 |8When a defendant in a homicide prosecution claims self-defense, the burden
 
 *1175
 
 is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense.
 
 State v. Hyman,
 
 09-409, p. 9 (La.App. 5 Cir. 2/9/10), 33 So.3d 271, 278,
 
 writ denied,
 
 10-0548 (La.10/1/10), 45 So.3d 1094. According to LSA-R.S. 14:20, a homicide is justifiable “[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.” The determination of a defendant’s culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger.
 
 Hyman,
 
 09-409 at 10, 33 So.3d at 278.
 

 The jury is the ultimate fact-finder in determining whether a defendant proved his condition and whether the State negated the defense beyond a reasonable doubt.
 
 Id.
 
 The trier-of-fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Singleton,
 
 05-622, p. 7 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 651. It is not the function of the appellate court to assess the credibility determinations of the trier-of-fact or to re-weigh the evidence.
 
 Id.
 

 In the instant case, the jury was confronted with conflicting testimony offered by defendant and various witnesses for the State. The two primary witnesses to the incident, Timothy Radecker and Brandon Jensen, offered testimony that was inconsistent with defendant’s claim of self-defense. Though both men confirmed that there had been an ongoing disagreement between defendant and Mr. Musgrove regarding the broken truck window, which involved a physical altercation, their testimony did not support a conclusion that defendant [ flacted in self-defense (i.e., that the defendant could reasonably have believed his life to be in imminent danger or that deadly force was necessary to prevent the danger).
 

 As stated above, Mr. Radecker testified that when defendant suddenly walked inside, Mr. Musgrove turned around and started to walk back around the front of his truck. At that point, defendant came out of the house and started shooting. Mr. Radecker testified that Mr. Mus-grove’s back was turned toward defendant when he was shot and that no one in Mr. Musgrove’s truck had a weapon. Mr. Jensen testified that as Mr. Musgrove walked up the sidewalk, defendant ran inside. Mr. Jensen yelled a warning to Mr. Mus-grove to run, and as Mr. Musgrove turned and started running, defendant came out the front door and started shooting. Mr. Jensen indicated that Mr. Musgrove’s back was toward defendant when the shots were fired. Mr. Jensen further testified that no one else at the scene had a firearm.
 

 Other than Chantel Dufrene’s testimony that Brandon LeLeaux told her a weapon was removed from the deceased’s body after he was shot, defendant offered no evidence to suggest that Mr. Musgrove had a weapon of any kind. Moreover, defendant’s testimony that Mr. Musgrove was advancing on defendant at the time of the shooting was contradicted by testimony offered by the State’s witnesses indicating that Mr. Musgrove was attempting to flee when defendant shot him.
 

 Finally, the testimony offered by Dr. Susan Garcia corroborates the testimony that Mr. Musgrove’s back was facing defendant at the time of the shooting. Dr. Garcia testified at trial that the cause of death was multiple gunshot wounds, primarily to the victim’s back and side. Additionally, Dr. Garcia testified that at least one of the wounds was not a close range wound.
 

 
 *1176
 
 |inIn contrast, defendant testified that when Mr. Musgrove arrived, he threatened to drag defendant out of his house if he would not fight. According to defendant, Mr. Musgrove walked to his vehicle and appeared to retrieve a weapon. In response, when Mr. Musgrove turned back around, defendant shot Mr. Musgrove. Contrary to the testimony offered by Mr. Radecker and Mr. Jensen, defendant claimed that Mr. Musgrove was coming toward him when he fired the first shot. However, on cross-examination, defendant admitted that the deceased had never threatened him with a gun and that, although he assumed the deceased was returning to his vehicle to retrieve a weapon, he did not see a weapon in the deceased’s hands when he began shooting. Finally, defendant testified that, even though he felt that he had to shoot the deceased, he could have called 911 when the deceased arrived at his house or he could have closed the door.
 

 The jurors clearly found the testimony offered by the State’s witnesses to be more credible than the testimony of defendant. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.
 
 Jones,
 
 08-20 at 7, 985 So.2d at 240.
 

 In the instant case, the jury was presented with all of the evidence and apparently rejected defendant’s testimony regarding self-defense. Based on the record before us, we find that the State met its burden of proving defendant did not act in self-defense, and the evidence was clearly sufficient to support his conviction for manslaughter. As such, this assignment of error is without merit.
 

 In his second assignment of error, defendant contends that, under the circumstances, the trial court erred by imposing the maximum sentence provided for under the Habitual Offender Law. Specifically, defendant asserts that the trial court, in imposing an 80-year sentence, failed to consider that the deceased was the ^instigator and that it was reasonable for defendant to believe he was in grave danger. Defendant further contends that the trial court improperly put the onus on him to withdraw from his own home and retreat from the situation. Finally, defendant argues that the trial court failed to consider these mitigating factors: (1) defendant had no criminal history of violent crimes (only a prior felony for possession of Xanax); (2) he had strong family support; (3) he was not likely to commit a similar act; (4) he had withdrawn repeatedly from threats and abuse by the deceased; (5) he had a work history and is a father; and (6) he believed, as did others, that the deceased would kill or seriously injure him. Thus, defendant contends that the trial court’s failure to consider mitigating factors was contrary to the sentencing requirements of LSA-C.Cr.P. art. 894.1 and LSA-R.S. 15:529.1.
 

 Defendant did not make or file a motion to reconsider sentence pursuant to LSA-C.Cr.P. art. 881.1 subsequent to his original sentencing or after he was re-sentenced pursuant to LSA-R.S. 15:529.1. Instead, defendant merely objected to his sentences at the sentencing hearings, without alleging any specific grounds for the objection. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only.
 
 State v. Warmack,
 
 07-311, p. 7 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 108; LSA-C.Cr.P. art. 881.1(E). As such, defendant is limited to a review of his sentence for constitutional excessiveness.
 

 
 *1177
 
 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment.
 
 State v. Pearson,
 
 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 655. A sentence is considered excessive, even when it is within the applicable statutory |, grange, if it imposes needless pain and suffering and is grossly disproportionate to the seriousness of the offense.
 
 Warmack,
 
 07-311 at 7, 973 So.2d at 109.
 

 In reviewing a sentence for ex-cessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice.
 
 Pearson,
 
 07-332 at 15, 975 So.2d at 655-56. Three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 Pearson,
 
 07-332 at 15-16, 975 So.2d at 656. The trial judge is afforded wide discretion in determining sentence, and the court of appeal will not set aside a sentence absent a clear abuse of the trial court’s discretion.
 
 Id.
 
 at 15, 975 So.2d at 656.
 

 Defendant was found guilty of manslaughter, in violation of LSA-R.S. 14:31. LSA-R.S. 14:31(B) provides that whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years. On February 13, 2009, defendant was sentenced to 40 years at hard labor. In imposing defendant’s sentence, the court noted as follows:
 

 Mr. Glaub, you had ample opportunity. You knew how to use 9-1-1 after you shot him. You could have used 9-1-1 when he came to the house. You evidently knew the number.
 

 What disturbed me the most about that was the first words out of your mouth on that 9-1-1 tape is you’re pleading self defense. Okay?
 

 There were many options given to you that day. My problem is that there were a number of the gunshot wounds to the back. This individual did not come to your house with a gun. There was no evidence to suggest there was a gun. There was evidence to suggest there wasn’t one from that lady that was standing in the doorway who called 9-1-1.
 

 My problem is, is that you shot in a residential area and created a risk of harm or great bodily harm to more than one person.
 

 I believe that you are in need of correctional treatment, that you need to be put in an institution, because I believe that you are a danger to society. And I believe that based on this, and I’m doing this under [ 1sArticle 894.1 of the Code of Criminal Procedure of the sentencing guidelines, that you used a dangerous weapon in the offense of this, being a gun, and that I believe that any lesser sentence that I sentence you to would deprecate the seriousness of this offense.
 

 After defendant was sentenced, the State filed a multiple offender bill of information. At the multiple bill hearing on August 7, 2009, the trial court found that defendant was a second felony offender. The trial court vacated defendant’s original sentence and imposed an enhanced sentence of 80 years imprisonment at hard labor, without benefit of probation or suspension of sentence, in accordance with LSA-R.S. 15:529.1. In resentencing defendant, the trial court noted:
 

 Alright, Mr. Glaub, the Court recalls this case. I remember the testimony in this case. There was never any evidence to suggest that this — that the victim, or this individual, the deceased, had
 
 *1178
 
 a weapon of any kind; as a matter of fact, when you produced this weapon, he fled, and he was shot multiple times in the back. I understand that you did call 911, but you didn’t call 911 when this individual approached your particular residence. You either had an idea he was coming, or knew he was coming, because you had a fully loaded weapon at your disposal. As a matter of fact, you fired every single projectile from that clip. Because when the police came, that weapon was reloaded with another clip. So you knew enough about the weapon to know how to reload it.
 

 The Court is extremely troubled by that. Things could have been handled a different way, they weren’t. I am not trying to get into those facts. You could have called 911 of the police when this individual showed up at your residence. You didn’t do that. I think that’s a lapse in judgment.
 

 ⅜ ⅜ ⅜ ⅜
 

 Therefore, it is going to be the sentence of this Court, and as I do so, as I did in the sentencing, I refer back to the sentencing guidelines, and I know, under this, the sentence can be anywhere from twenty to eighty years without benefit of parole (sic) or suspension of sentence; but as I said at this time, you created an undue risk, or, in my opinion, that risk was in that neighborhood in which you fired multiple shots. And what makes it even worse is that it was your own neighborhood and you’re familiar with all of your neighbors, where people that were living across the street, there were kids in that particular area, I believe that you are in need of custodial correctional environment which will be provided by this multiple bill sentencing, and that any lesser sentence would deprecate the seriousness of this offense, and that the multiple gun shots resulted to cruelty to that victim in which he shot multiple times.
 

 |14As a second felony offender, defendant faced a possible sentencing range of 20 to 80 years imprisonment. LSA-R.S. 15:529.1(A)(1)(a). Defendant received an 80-year sentence. Courts have upheld the maximum sentence of 80 years in similar cases.
 

 In
 
 State v. Walker,
 
 99-2868 (La.App. 4 Cir. 10/18/00), 772 So.2d 218, 221, the defendant confessed to strangling a woman with whom he had smoked crack, after she allegedly began hitting and pushing him when he informed her he had no more money or crack. The defendant, who was tried for second degree murder, was found guilty of the lesser offense of manslaughter and sentenced, as a second offender, to 80 years imprisonment, the maximum allowed under the law.
 
 Walker,
 
 99-2868 at 2, 10, 772 So.2d at 220, 224. The defendant’s only prior conviction was for theft valued at more than five-hundred dollars, though he had a lengthy history of arrests.
 
 Id.
 
 at 11, 772 So.2d at 224. The Fourth Circuit affirmed the 80-year sentence.
 

 In
 
 State v. Johnson,
 
 09-0706 (La.App. 4 Cir. 5/26/10), 41 So.3d 1188, 1198, the defendant was found guilty of manslaughter and sentenced, as a second-felony offender, to 80 years at hard labor. In sentencing the defendant to the maximum sentence, the trial court stated that it had considered the sentencing guidelines of LSA-C.Cr.P. art. 894.1, and found that the defendant was in need of incarceration.
 
 Id.
 
 at 32, 41 So.3d at 1208. The trial court also cited his reasons for imposing the sentence.
 
 Johnson,
 
 09-0706 at 33, 41 So.3d at 1209. In reviewing and affirming the defendant’s habitual offender sentence, the Court found that although the sentence imposed on the defendant was severe and there was no indication that he had a record of any previous violent offense, the maximum sen
 
 *1179
 
 tence of 80 years could not be said to be grossly disproportionate to the severity of the crime or the purposeless imposition of pain and suffering.
 
 Id.
 
 at 35-36, 41 So.3d at 1210.
 

 See also
 
 State v. Kelson,
 
 09-0204 (La.App. 4 Cir. 6/9/10), 40 So.3d 1194,
 
 writ denied,
 
 10-1575 (La.1/14/11), 52 So.3d 901.
 

 It is recognized, as noted by the defendant, that there are similar cases in which the court has found both that lesser sentences imposed on second offenders for manslaughter were not constitutionally excessive and in which lesser sentences have been found to be excessive. However, it is the duty of this Court to determine whether the trial court abused its broad sentencing discretion based on the facts of the present case.
 
 State v. Jones,
 
 99-2207, p. 3 (La.1/29/01), 778 So.2d 1131, 1133. While another judge might have weighed the circumstances in this case differently, the question on review is whether the trial judge abused his discretion, not whether another sentence might have been more appropriate.
 
 State v. Cook,
 
 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959. Thus, the sentence in this case should only be set aside as excessive if the trial judge abused his broad sentencing discretion by imposing a grossly disproportionate term of imprisonment.
 

 Based on the facts of the instant case, we cannot say that the trial judge abused his sentencing discretion. Defendant was charged with second degree murder and found guilty of manslaughter. Defendant did not deny killing the victim, but rather claimed that he acted in self-defense. By finding defendant guilty of manslaughter, it is clear that the jury did not believe that the homicide was justified. Moreover, the trial judge clearly articulated his reasons for sentence, which show adequate compliance with LSA-C.Cr.P. art. 894.1. As noted by the trial judge, the deceased was unarmed and defendant created a risk of death or great bodily harm to more than one person. Finally, the evidence indicates that the defendant shot the deceased several times in the back, which the trial court found particularly troubling.
 

 h (Although the sentence imposed on defendant is severe and defendant does not have a lengthy prior record or a record of violent offense, we cannot say that the sentence is “nothing more than the purposeless imposition of pain and suffering” or is “grossly disproportionate to the severity of the crime.” Accordingly, because we find that it is not excessive, we affirm defendant’s sentence of 80 years. This assignment of error is without merit.
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). No errors requiring corrective action were noted. However, we note that defendant filed a motion for new trial based on newly discovered evidence, pursuant to LSA-C.Cr.P. art. 851(3), on November 9, 2009. Although a hearing on the motion was originally set for January 4, 2010, the trial court granted defendant’s motion for appeal on November 17, 2009, prior to the scheduled hearing. A minute entry dated August 18, 2010, contains the following notation regarding defendant’s motion for new trial: “Motion moot — not this court jurisdiction.” Thus, it does not appear that the trial court has made a substantive ruling on defendant’s motion for new trial.
 

 Accordingly, while we affirm both defendant’s conviction and sentence, we remand this matter to the trial court for a hearing on defendant’s motion for new trial, reserving him the right to -appeal an adverse ruling on this motion. See
 
 State v. Abbott,
 
 29,497, p. 11 (La.App. 2 Cir. 6/18/97), 697 So.2d 636, 642,
 
 writ denied,
 
 97-1929 (La.1/9/98), 705 So.2d 1097; and
 
 State v.
 
 
 *1180
 

 Vampran,
 
 491 So.2d 1356, 1367 (La.App. 1 Cir.1986),
 
 twit denied,
 
 496 So.2d 347 (La.1986).
 

 117DECREE
 

 For the foregoing reasons, defendant’s conviction and sentence are affirmed, and the matter is remanded for a hearing on defendant’s motion for new trial.
 

 AFFIRMED; REMANDED.
 

 [1]
 

 . LSA-R.S. 14:31 provides, in pertinent part:
 

 A. Manslaughter is:
 

 (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
 

 (2) A homicide committed, without any intent to cause death or great bodily harm, (subparts omitted).