JOAN BERNARD ARMSTRONG, Chief Judge.
 

 |
 
 ^STATEMENT OF CASE
 

 On December 19, 2008, the State filed a bill of information charging the defendant, Matthew R. Scoggin,
 
 [1]
 
 with molestation of his eight-year old niece, I.B.
 
 [2]
 
 , a violation of La. R.S. 14:81.2. The bill of information indicated that the alleged offense occurred during the period of August 1, 2008 through August 30, 2008. The defendant pled not guilty at his arraignment on January 28, 2009.
 

 On September 28, 2009, the State filed a notice of intent to offer evidence of other similar acts involving sexually assaultive behavior pursuant to La. C.E. art. 412.2. This behavior included unadjudicated acts of molestation committed by the defendant upon another juvenile victim several years prior to the charged offense. The trial court granted the State’s request on October 14, 2009.
 

 On November 17, 2009, the defendant filed a Motion to Quash the State’s subpoena to Reverend Henry Hudson, the defendant’s minister, on the grounds that compelling his testimony would violate the “clergyman’s privilege” of La. C.E. art. 511. After taking preliminary testimony from Reverend Hudson, the court granted |⅞⅛ part and denied in part the defendant’s motion, allowing Reverend Hudson to be called for the limited purpose of confirming that a meeting took place between him, the defendant and others. The State applied for supervisory review from this Court, which reversed the trial court’s ruling, holding the La. C.E. art. 511 privilege did not extend to this situation, and thus Reverend Hudson could testify in full.
 
 [3]
 

 Thereafter, the defendant sought review of that ruling to the Louisiana Supreme Court, which granted writs and reinstated the trial court’s original ruling limiting Reverend Hudson’s testimony.
 
 [4]
 
 Also on that date, the State moved to amend the bill of information to expand the dates of the charged offense from January 1 through October 12, 2008. The defendant moved to quash on the grounds that the State’s expansion of its factual predicate to allege incidences occurring prior to the August, 2008 sentencing amendment of the molestation statute placed him at risk of receiving a life sentence under the old provision, which mandated a grand jury indictment. After hearing argument on the issue on November 18, 2009, the trial court denied the defendant’s motion to quash. On November 19, 2009, following a two day jury trial, the jury found the defendant guilty of indecent behavior with a juvenile.
 

 
 *148
 
 On January 14, 2010, the defendant filed a Motion in Arrest of Judgment based on the grounds that charges had improperly been instituted by bill of information rather than by grand jury indictment.
 

 On July 15, 2010, the trial court denied the motion and sentenced the defendant to a term of fifteen years, at hard labor, without benefit of parole, ^probation, or suspension of sentence for the first ten years, and placed the defendant on active probation for the remaining five years. The defendant’s Motion for Reconsideration of Sentence was denied on February 22, 2010. On March 1, 2010, pursuant to the defendant’s Motion to Correct Illegal Sentence, the trial court amended the defendant’s sentence to include the provision that his custody for the last five years of his sentence would be suspended to allow for probation.
 

 STATEMENT OF FACT
 

 During the 2008-2009 school year, third grade teacher, Ms. Anna Pignato, taught the victim language arts and math in the gifted program at Magnolia Trace Elementary in Mandeville. On October 13, 2008, the victim, along with other students, viewed a thirty minute video entitled ‘Tes, you can say No” which was a dramatization of a child experiencing problems with a sexually abusive uncle. The video was a tutorial in assertiveness to prevent sexual abuse. After the presentation, one of Ms. Pignato’s students reported to her that the victim told the student that the defendant inappropriately touched her genital area. Ms. Pignato spoke with the victim and confirmed that the victim had in fact made the allegation. Further questioning the victim, Ms. Pignato learned that the victim had not told anyone about the improper touching before she viewed the video. Ms. Pignato reported the incident to the school’s guidance counselors, Susan Bro-cotta and Tobin Keeth, which concluded Ms. Pignato’s involvement in the matter.
 

 Ms. Tobin Keeth was a six year guidance counselor at Magnolia Trace Elementary School during the 2008 school year. Her job entailed providing the school children with age-appropriate sexual abuse prevention education, which ^includes the use of video presentations. After receiving a report from Ms. Pignato, Ms. Keeth spoke with the victim. Ms. Keeth then arranged a meeting with the victim’s parents to allow the victim to tell them what she had told the teachers. The victim’s parents were devastated and sickened by the victim’s revelation.
 

 B.B., the victim’s mother, is the defendant’s wife’s sister. The families had a close relationship before she learned that the defendant molested her daughter. B.B.’s sister and the defendant often baby sat B.B.’s children at the defendant’s home and hosted family dinners. B.B.’s children enjoyed visiting their cousins, the defendant and his wife. B.B. had no suspicion as to the defendant’s behavior. She believed that the defendant was a doting uncle to her children. B.B. has not spoken to her sister since B.B. learned of the molestation. There is no relationship or communication between the two families.
 

 On October 13, 2008, B.B. received a call from Ms. Keeth requesting that B.B. come to the school for a meeting with Ms. Keeth and the victim. B.B. was horrified and sickened by the victim’s revelation. The victim was nervous, fidgety and crying at the time she told her mother about the molestation because the defendant told the victim that their encounters were to be a secret between them. B.B. learned that victim told her younger brother, E.B., what the defendant had done to her. The following day, B.B. contacted personnel at the Children’s Advocacy Center, who advised her to speak with NOPD Sgt. Loren
 
 *149
 
 zo. Then, Sgt. Lorenzo put her in touch with Officer Jonay Ross. Within a week of the revelation, B.B. and the victim were seen at the Child Advocacy Center. As a staff member interviewed the victim, B.B., her husband and young sons waited in another room. After the interview, a staff physician performed a physical exam on the victim.
 

 |sDr. Adrienne Atzemis, an expert in the field of child abuse pediatrics, spoke with the victim at Children’s Hospital on October 20, 2008. That interview, along with the victim’s medical history, was audio taped. The victim provided Dr. Atzemis with a detailed history of hand to vaginal contact by the defendant.
 

 The victim is the defendant’s niece and was seven years old at the time the defendant began touching her vagina. The touching occurred more than once and took place in various locations. The defendant would make certain that no one was around and then place the victim on a bed or chair and remove her pants/skirt and underwear to touch her. The defendant referred to victim’s vagina as the “sweet spot”, and he told her not to tell anyone about the touching because it was a secret between them. The victim kept her silence about the defendant’s behavior until she viewed a video at her school about a young boy subjected to inappropriate touching by his uncle. The video made the victim uncomfortable so she told her teacher about her uncle’s behavior. The teacher consulted the school counselors, who in turn contacted the victim’s parents. After the victim revealed the “secret” to her teacher, the victim felt relieved. The victim remembers recounting the inappropriate behavior to a doctor after her parents learned of it from her school.
 

 Nineteen year-old C.Y. and her family were friends with the defendant and his family. She would often spend the night at the defendant’s house as a youngster of eight or nine years old. On one of those occasions, she awoke to find the defendant with his hand in her pants touching her vagina. She did not know what was going on but she knew it was not right. As she got older and took sex education classes, she realized that what the defendant did to her was wrong so she told her parents in June 2008. She made the decision to tell her parents as a result of medical testing by Dr. Andy Burka. During the session with Dr. Burka, she | ^replied affirmatively to a questionnaire which asked if she had ever been sexually assaulted. She told Dr. Burka of the inappropriate touching because her feelings of embarrassment and not wanting to hurt or make trouble for the defendant had been building over the years, and she finally had to let it out.
 

 G.Y., C.Y.’s father, until the last year and half, had been life-long friends with the defendant. He also knew the defendant’s wife and children. His friendship with the defendant and his family ended in June 2008 when he learned the defendant had molested his daughter. G.Y. and his family, especially his daughter, were devastated by the defendant’s behavior. After months of trying to decide what to do about the molestation, G.Y. and his wife decided to consult a counselor, who suggested that they enlist the aid of an intermediary, someone who could make their feelings known to the defendant. They sought the aid of the Reverend Henry Hudson at Trinity Episcopal Church
 
 [5]
 
 , as the intermediary so that they could face the defendant as accusers. At Reverend
 
 *150
 
 Hudson’s suggestion, G.Y. and his wife prepared a statement
 
 [6]
 
 and arranged a meeting between them, Reverend Hudson and the defendant on November 24, 2008. The meeting was not called for spiritual advice or counseling. G.Y. and his wife were concerned that the defendant may become violent if they confronted him alone. When the defendant read the statement, he dissolved in tears and said, “I tried — I tried to be a good man but I’ve made so many mistakes and I’m so, so sorry.” The meeting lasted five or six minutes, after which G.Y. and his wife left Reverend Hudson to counsel the defendant. In August 2009, G.Y. and his wife met with the District Attorney about the defendant’s molestation of their daughter.
 

 |7Reverend Henry Hudson participated in a meeting on November 24, 2008, in his office at Trinity Episcopal Church between the defendant and G.Y. and his wife. The defendant’s wife was unable to participate in the meeting. Reverend Hudson advised the attendees that he considered the meeting confidential, and he said that he would not disclose to anyone else anything that was discussed in the meeting.
 

 Mrs. Dorsey Scoggin, the defendant’s wife, and the defendant were married for twenty-four years and have two children. I.B. is Mrs. Scoggin’s niece, and I.B.’s mother is Mrs. Scoggin’s younger sister. Mrs. Scoggin categorically denied that the defendant inappropriately touched I.B. On November 25, 2008, Mrs. Scoggin wrote a letter to G.Y. and his wife, in which Mrs. Scoggin spoke of the allegation as “heartbreaking.” Mrs. Seoggin’s letter also thanked G.Y. and his wife for their mercy and kindness.
 

 ERRORS PATENT
 

 Pursuant to La.C.Cr.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, the only possible patent error is discussed as Assignment of Error Number 1.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 The trial court erred in allowing the prosecution to proceed on a bill of information when the charge of molestation of a juvenile charging acts occurring before the August 15, 2008, amendment of La. R.S. 14:81.2’s sentencing provisions required indictment by grand jury. This issue appears to be
 
 res nova
 
 based upon the facts of this case.
 

 Act 33 of the 2008 session of the Louisiana Legislature amended the sentencing range for molestation of a juvenile from twenty-five years to life to Ltwenty-five to ninety-nine years, effective August 15, 2008. Additionally, La.C.Cr.P. art. 382(A) mandates that a prosecution for an offense punishable by life imprisonment be instituted by indictment by a grand jury. Moreover, La. Const, art. 1, § 15 requires that a defendant be indicted by a grand jury when a crime is punishable by life imprisonment. Just as important, the general rule is that the penalty in effect at the time of the commission of the offense is applicable.
 
 State v. Dick,
 
 2006-2223 (La.1/26/07), 951 So.2d 124, citing
 
 State v. Sugasti,
 
 2001-3407 (La.6/21/02), 820 So.2d 518. However, this case differs from the
 
 Dick
 
 and
 
 Sugasti
 
 cases in that those cases, unlike the present case, involved the entire sum of the acts constituting the charged offense occurring prior to the date on which the new sentencing provisions took effect.
 

 
 *151
 
 In this case, the defendant was charged in a single count bill of information referencing acts constituting the crime of molestation of a juvenile that occurred during the period of January to October 2008— incidents that occurred both before and after August 15, 2008, when the amended sentence took effect. Because the various incidents of misconduct constitute a single count, it is impossible to split those incidents occurring before and after August 15, 2008, respectively.
 

 More importantly, the defendant in this case was not subject to the risk of lifetime imprisonment if convicted of the crime charged. The trial court considered the defendant’s maximum sentencing exposure in conjunction with his Motion to Quash filed the first day of trial. The trial court determined that a life sentence in this case was not being sought by the State and included that fact in jury instructions. To that end, the trial court instructed the jury that the defendant’s possible sentence upon conviction was a minimum of twenty-five to ninety-nine years in prison. There was no confusion as to the defendant’s possible sentencing | nrange. In fact, when the victim was asked by defense counsel whether anyone told her how long the defendant could go to jail, she responded: “A minimum of twenty-five years and no more than ninety-nine years.”
 

 The policies underlying the requirement of a grand jury indictment for offenses punishable by lifetime imprisonment are not brought into play in this case because the defendant herein was never subject to life imprisonment. However, it should be noted that the undeniable existence of a tangible and indivisible portion of the corpus delicti,
 

 [7]
 

 or the fact that a crime has been committed, was properly charged by bill of information.
 

 It is reasonable that the logic underlying the trial court’s determination in this matter — that a defendant charged with a single count of conduct that required, in part, indictment by grand jury and permitted, in part, institution by information, and did not subject the defendant to life imprisonment upon his being charged by bill of information — is reasonable under the facts of this case.
 

 Given the facts of this case, the defendant has failed to meet his burden of demonstrating that his conviction warrants reversal because he was charged in a bill of information with molestation of a juvenile. This assignment is meritless.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 In a second assignment of error, the defendant complains that the trial court erred in admitting other crimes evidence relating to an earlier incident of juvenile molestation.
 

 Initially, the defendant claims that the trial court erroneously permitted the testimony of C.Y.’s parents related to an earlier instance in which the defendant inappropriately touched C.Y. as evidence of the defendant’s lustful disposition toward children. He also claims that the State failed to give him proper notice of the anticipated testimony and failed to demonstrate that the testimony would be probative rather than prejudicial pursuant to La. C.E. art. 403’s balancing test.
 

 La. C.E. art. 412.2 provides in part:
 

 Evidence of similar crimes, wrongs, or acts in sex offense cases
 

 A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence
 
 *152
 
 of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403
 
 [8]
 
 .
 

 B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes
 

 In
 
 State v. Williams,
 
 2002-1030 (La.10/15/02), 830 So.2d 984, the Supreme Court decided that La. C.E. art. 412.2 does not require the trial court to conduct an evidentiary hearing prior to ruling on the admissibility of evidence or prior instances of sexually assaultive behavior committed by the defendant. Moreover, a trial court’s ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion.
 
 State v. Scales,
 
 93-2003 (La.5/22/95), |u655 So.2d 1326. Nevertheless, the defendant’s argument is groundless. The record herein indicates that the State filed a notice under La. C.E. art. 412.2 six weeks prior to trial indicating that it intended to present evidence of an unadjudicated instance or instances of sexually assaultive behavior committed by the defendant against C.Y. occurring between 1997 and 1999, at the defendant’s residence. In response, the defense filed a motion
 
 in limine
 
 requesting a hearing on the State’s notice and objecting to its lack of basis for the trial court to render a decision. Five days prior to trial, the State supplemented its notice with a notice of evidence detailing the nature, time and location of the alleged prior acts, as well as identifying the complainant — albeit by her initials — C.Y. The State’s notice exceeded the specificity required by law. Therefore, the defendant did not suffer any prejudice.
 

 Next, the defendant complains that the trial court failed to hold the State to its burden of proving, by clear and convincing evidence, that the defendant committed the previous act against C.Y.
 

 La. C.E. art. 1104 sets forth the burden of proof in such instances:
 

 State v. Prieur;
 
 pretrial; burden of proof
 

 The burden of proof in a pretrial hearing held in accordance with
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973), shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404.
 

 In
 
 Huddleston v. United States,
 
 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court found that the burden of proof required by Federal Rules of Evidence Article IV, Rule 404, is a preponderance of the evidence. However, when given the chance to clarify the burden of proof issue |12in
 
 State v. Rose,
 
 2006-0402 (La.2/22/07), 949 So.2d 1236, the Louisiana Supreme Court declined.
 
 [9]
 

 
 *153
 
 With the Legislature expressing its intent to hold the State to a preponderance of the evidence burden on this issue via La. C.E. art. 1104, and considering that the Louisiana Supreme Court has not addressed the burden of proof under La. C.E. art. 1104, it is not unreasonable to conclude that the State’s burden of proof for introducing other crimes evidence at trial is by a preponderance of the evidence.
 

 Concluding, under this assignment of error, the defendant claims that the trial court erred by improperly weighing the probative value of the proffered evidence against its risk of prejudice to him under La. C.E. art. 403. The defendant reasons that the single incident involving C.Y. occurred ten years prior to the instant offense and fails to demonstrate his lustful disposition toward children. Further, he contends that the introduction of the evidence only confused and misled the jury and constituted an undue waste of time.
 

 As discussed
 
 ante,
 
 the State’s supplemental notice satisfied La. C.E. art. 403 by either evidentiary burden in demonstrating both the relevance and probative value of the evidence relating to the defendant’s lustful disposition toward children. Moreover, the evidence satisfied the four-prong balancing test of
 
 United States v. Enjady
 

 [10]
 
 , 134 F.3d 1427 (10 Cir.1998) (the
 
 En-jady
 
 balancing test contains an evaluation, asking: (1) whether the prior act had been clearly proven; (2) how probative the evidence is to the material fact it is introduced to support; (3) how seriously the parties are disputing the material fact; and (4) whether less prejudicial evidence is available to the government.
 
 Enjady,
 
 134 F.3d 1427).
 

 As noted earlier herein, the State supplemented its notice with a notice of evidence detailing the nature, time and location of the alleged prior acts, as well as identifying the complainant and revealing what her anticipated trial testimony would be. Other Louisiana appellate courts have found evidence proffered under La. C.E. art. 412.2 properly admitted in the trial court to show a defendant’s lustful disposition toward children. See
 
 State v. Cotton,
 
 42,509 (La.App. 2 Cir. 9/19/2007), 965 So.2d 1016;
 
 State v. Verret,
 
 2006-1337 (La.App. 1 Cir. 3/23/07), 960 So.2d 208;
 
 State v. Mayeux,
 
 2006-944 (La.App. 3 Cir. 1/10/07), 949 So.2d 520; and
 
 State v. Patterson,
 
 2005-560 (LaApp. 5 Cir. 1/31/06), 922 So.2d 1195.
 

 As for the defendant’s contention that the single instance of his assaultive
 
 *154
 
 behavior toward C.Y. was so remote in time as to have no probative value, the fact that the other acts or crimes happened some time before the offense for which the defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility.
 
 State v. Jackson,
 
 93-0424 (La.1993), 625 So.2d 146. In this case, the evidence relating to the defendant’s abuse of I.B. and C.Y. suffices to prove his lustful disposition toward children — I.B. and C.Y. were both under the age of thirteen when molested by the defendant; they were molested in the same manner and under the same circumstances, in the defendant’s home.
 

 The State’s use of C.Y.’s testimony served to fortify this case wherein the sole witness to the defendant’s acts in the instant crime was the victim, who was eight years old at the time of the incidents and nine years old when she testified. There was no physical or medical evidence that I.B. had been molested or that the defendant was the party responsible. I.B.’s mother was subjected to scathing cross examination in an attempt to assail her credibility as a witness and a mother. The State’s chances of a successful prosecution would have been reduced without the testimony of C.Y., G.Y. and Rev. Hudson establishing that the defendant had a lustful disposition to children like I.B. Moreover, the witnesses’ corroborative testimony served to properly focus the jurors’ attention on the likelihood that the defendant molested I.B.
 

 Finally, as for the defendant’s contention that the evidence of other crimes was more prejudicial than probative, he complains that three of the eight prosecution witnesses were called in regard to the prior incident. However, he fails to show how that fact constituted an undue waste of time.
 

 Of the 194 pages of the record containing the trial testimony of the State’s witnesses, only twenty-nine pages are dedicated to testimony relating to the defendant’s inappropriate behavior with C.Y., with the remaining 85% of the testimony relating solely to the accusations relating to I.B.
 

 11fiNor has the defendant articulated how the taking of writs based upon Rev. Hudson’s invocation of the clergyman’s privilege constituted undue delay directly attributable to the State’s election to offer the other crimes evidence.
 

 Even assuming the trial court did err in admitting the other crimes evidence relating to C.Y., the error is harmless. A court’s erroneous admission of other crimes evidence is a trial error that is subject to harmless analysis and does not warrant reversal where the defendant’s conviction is not attributable to the error.
 
 State v. Walker,
 
 1999-2868 (La.App. 4 Cir. 10/18/00), 772 So.2d 218. I.B. positively, unambiguously and consistently identified the defendant as the person who molested her. The supporting witnesses verified the internal consistency of I.B.’s testimony and corroborated the circumstances evidencing the defendant’s opportunity to commit the charged acts. Even disregarding C.Y.’s testimony, the evidence in this case overwhelmingly proves the defendant’s guilt beyond a reasonable doubt of indecent behavior involving I.B. See
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 

 Concluding, the trial court did not abuse its discretion by allowing the State to introduce testimony and other evidence at
 
 *155
 
 trial relating to the defendant’s prior molestation of C.Y. The defendant had sufficient notice of the nature of the evidence sought to be admitted; the State sufficiently demonstrated the probative nature of that evidence by either applicable standard; and the court correctly determined that the evidence was more probative than prejudicial under La. C.E. art. 403. This assignment is meritless.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 By this assignment of error, the defendant argues that the trial court erred in admitting and/or limiting the testimony of Reverend Henry Hudson under the [ 1fi“clergymen’s privilege”. The defendant asserts that the trial court erred by permitting G.Y. to testify concerning the communications between the defendant and G.Y. which occurred during their meeting with Rev. Hudson. The defendant also argues that the trial court compounded its mistake by not allowing Rev. Hudson to more fully testify so as to refute GY.’s testimony concerning his conversation with the defendant.
 

 This issue has been litigated previously on writs in both this Court and in the Louisiana Supreme Court.
 

 Following a pre-trial hearing on November 17, 2009, at which Rev. Hudson testified, the district court ruled that the defendant had waived any privilege as to the contents of the meeting because he allowed Rev. Hudson to disclose what had been discussed with Dorsey Seoggin, who was not at the meeting. However, the trial court limited Rev. Hudson’s testimony to the fact that a meeting took place between G.Y., S.Y. and the defendant and his wife but allowed G.Y. and S.Y. to testify fully concerning what was said at the meeting.
 

 The State sought writs in this Court arguing that the trial court had improperly limited its questioning of Rev. Hudson in spite of the court’s ruling that no privilege existed. The defendant filed an opposition contending that all parties understood the meeting to be for purposes of spiritual counseling; that Dorsey Scoggin’s status as a privileged communicant was understood by all of the participants despite the fact she was not present at the meeting; that Rev. Hudson’s subsequent disclosure to her of the details of the meeting did not act to waive the privilege; and that the defendant’s subsequent disclosure to her of the same was further protected by the spousal privilege.
 

 |17This Court granted the State’s writ and determined that the meeting was not for spiritual guidance purposes and thus that no privilege existed, and further that Rev. Hudson was open to full examination as to the contents of the meeting. See
 
 State v. Matthew Scoggins,
 
 unpub. 2009-1568 (La.App. 4 Cir. 11/18/09), in which this Court held:
 

 We are bound by the Supreme Court’s decision in
 
 State v. Gray,
 
 2004-1197 (La.1/19/05), 891 So.2d 1260. The tests are:
 

 Whether the clergyman privilege of La. C.E. art. 511 applies is determined under a totality of the circumstances test, in which all of the following requirements must be shown to exist: (1) it must be determined that the person to whom the communication was received is a “clergy man;” (2) it must be determined that the purpose of the communication was to seek spiritual advice or consolation; (3) it must be determined that the communication was made privately and was not intended for further disclosure except to other persons present in furtherance of the purpose of the communication; and (4) even if those explicit requirements of the article are met, it must also be determined whether or not the communicant waived the application of the privilege.
 

 
 *156
 

 Id.,
 
 p. 11, 891 So.2d at 1167.
 

 Under the four conjunctive tests in
 
 Gray
 
 and based upon the record before us, we do not find that the second test is satisfied and/or the privilege has been waived. Reverend Hudson’s testimony is not subject to the La. C.E. art. 511 clergyman’s privilege in this case. See also
 
 State v. Berry,
 
 324 So.2d 822 (La.1975).
 

 State v. Matthew Scoggins,
 
 2009-1563, p. 1.
 

 Thereafter, Rev. Hudson sought review of this Court’s ruling in the Louisiana Supreme Court, arguing that the purpose of the meeting had been spiritual guidance, and thus the privilege existed; that neither the defendant nor Rev. Hudson had waived the privilege by disclosing the contents of the meeting to Dorsey Scoggin; and that the trial court had acted properly in limiting Rev. Hudson’s testimony. The Supreme Court granted the writ and reinstated the original ruling of the trial court finding that any privilege had been waived by Rev. Hudson’s disclosure of the contents of the meeting to Dorsey Scoggin, and thus that G.Y. and S.Y. could testify regarding the defendant’s statements made at that meeting. See
 
 State v. Matthew Scoggins,
 
 unpub. 2009-2489 (La.11/18/09).
 

 Once again, on appeal the defendant raises the same error, based upon the same law and facts, and asks this Court to revisit its previous decision; however, because this issue has already been litigated before this Court and the Louisiana Supreme Court, this assignment of error is barred from consideration on appeal by the “law of the case” doctrine. The “law of the case” doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not merely those arising from the full appeal process. See
 
 Brumfield v. Dyson,
 
 418 So.2d 21 (La.App. 1 Cir. 6/29/82). This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court. The reasons for the “law of the case” doctrine is to avoid re-litigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue.
 
 Day v. Campbell-Grosjean Roofing and Sheet Metal Corp.,
 
 260 La. 325, 256 So.2d 105 (1971). The defendant herein cannot show that in light of the subsequent trial record, that the determination of this issue was patently erroneous and produced an unjust result.
 
 State v. Humphrey,
 
 412 So.2d 507, 523 (La.1981). This assignment is meritless.
 

 ASSIGNMENT OF ERROR NUMBER 4
 

 By this assignment, the defendant argues his sentence for indecent behavior with a juvenile is excessive.
 

 In
 
 State v. Cassimere,
 
 2009-1075 (La.App. 4 Cir. 3/17/10), 34 So.3d 954, this Court noted:
 

 In
 
 State v. Landry,
 
 03-1671, pp. 7-9 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239-1240, this Court set forth the standard for reviewing an excessive sentence claim:
 

 La. Const, art. I, § 20 explicitly prohibits] excessive sentences.
 
 State v. Baxley,
 
 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment.
 
 State v. Francis,
 
 96-2389, pp. 6-7 (La.App.4 Cir.4/15/98), 715 So.2d 457, 461. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society.
 
 Baxley, supra.
 
 A sentence
 
 *157
 
 is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.
 
 State v. Johnson,
 
 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676. A sentence is grossly disproportionate if, when the crime, and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 Baxley,
 
 94-2982 at p. 10, 656 So.2d at 979.
 

 2009-1075, p. 5, 34 So.3d at 958-959.
 

 In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record.
 
 State v. Trepagnier,
 
 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.
 
 State v. Bonicard,
 
 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
 

 IznHowever, in
 
 State v. Major,
 
 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819 this Court stated:
 

 The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1.
 
 State v. Landos,
 
 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
 

 In
 
 State v. Soraparu,
 
 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
 

 On appellate review of sentence, the only relevant question is
 
 “
 
 ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ”
 
 State v. Cook,
 
 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting
 
 State v. Humphrey,
 
 445 So.2d 1155, 1165 (La.1984)),
 
 cert. denied,
 
 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.”
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979).
 

 In
 
 State v. Washington,
 
 414 So.2d 313 (La.1982), the Supreme Court stated:
 

 The sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration of otherwise relevant information.
 
 State v. Douglas,
 
 389 So.2d 1263 (La.1980) ...
 

 Washington,
 
 414 So.2d at 315.
 

 In this case, the defendant was convicted of indecent behavior with a juvenile, a violation of La. R.S. 14:81, for which the sentencing range when the victim is under the age of thirteen and the defendant is over the age of seventeen, is a minimum of two to a maximum of twenty-five years at hard labor. His fifteen year sentence is less than ten years of the maximum and obviously within the legislatively prescribed range.
 

 
 *158
 
 | ¾1 Although the defendant argues that the trial judge did not articulate the factors for his sentence, as mandated in La. C.Cr.P. art. 894.1, the trial judge sufficiently provided the factual basis therefor. At sentencing the trial judge stated:
 

 Let me just say I’ve had a lot of time to think about what [the defendant’s] sentence was going to be in this case. I’ve thought about how there are many people who have been affected by this incident, how a family has been torn apart, where two sisters are not talking to each other, where a father will be removed from the household from his family. I thought about all of those things, but at the end of the day when it is all said the done[,] I think what is most important is the victim in the case. Although the incident that occurred with [C.Y.] was not necessarily charged in this case, it’s an incident that the Court cannot ignore. I also cannot ignore the description of the incidents by [I.B.]. The jury believed her, this Court believes her and now the [defendant] has admitted to this Court that there were some actions that he took that were inappropriate ...
 

 While the trial judge also noted that she did not find the defendant to be “a horrible man” and acknowledged that he was “a gentlemen who has lived a good life” and who “has done a lot of good in the community,” she also said: “I do think that the [defendant] did something very bad to two girls, that those two little girls their lives will never [be] the same.” Moreover, the defendant addressed the trial judge, apologizing for “all the hurt and sorrow that [he had] caused and for “[his] wrong actions against [C.Y. and I.B.].” Asked by the trial judge what actions he was referring to, the defendant admitted that “[i]t was inappropriate touching.”
 

 Though the trial judge did not discuss the factors enumerated in La.C.Cr.P. art. 894.1, the factors the trial judge did note were sufficient to provide a factual basis for the sentence imposed.
 
 State v. Bell,
 
 2009-0588 (La.App. 4 Cir. 10/14/09), 23 So.3d 981(where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even when there has not been full Incompliance with La.C.Cr.P. art. 894.1) (the trial court need not recite the entire checklist of La. C.Cr.P. art. 894.1 but the record must reflect that the trial court adequately considered the guidelines).
 

 The trial court also considered mitigating factors in choosing the appropriate term of years:
 

 ... I received letters from people who attended church with [the defendant]. I’ve received letters from people who worked with him. I also received letters from people who have known him all of them lives. They’ve been friends — childhood friends and have been friends from the crib because their parents were friends ...
 

 The trial court was satisfied that it had “a full picture of the type of person that [the defendant] is”.
 

 The only remaining inquiry is whether the defendant’s sentence is too severe in light of the particular defendant and the circumstances. On its face, the defendant’s fifteen year sentence — ten years less than the maximum allowed under law and only ten of which will be served in custody — cannot be said to shock the conscious or constitute the meaningless imposition of pain and suffering. The Louisiana Supreme Court has held that the imposition of the maximum sentence for indecent behavior with a juvenile is neither excessive nor grossly disproportionate, given the State’s compelling interest in protecting children from abuse at the
 
 *159
 
 hands of adults. See
 
 State v. Interiano,
 
 2003-1760 (La.2/13/04), 868 So.2d 9.
 

 The cases the defendant cites in support of his argument that his sentence is disproportionate are distinguishable from his case.
 
 State v. Castillo,
 
 97-595 (La.App. 5 Cir. 11/25/97), 705 So.2d 751 (the defendant’s three year sentence or molesting a nine-year old female was the result of a plea agreement that spared the ^victim the necessity of testifying at trial);
 
 State v. M.L., Jr.,
 
 2009-392 (La.App. 3 Cir. 4/14/10), 35 So.3d 1183 (defendant’s four year sentence for indecent behavior with a female juvenile under thirteen years old declared excessive because it denied possibility of parole);
 
 State v. Brannon,
 
 2007-431 (La.App. 3 Cir. 12/5/07), 971 So.2d 511 (defendant’s seven year sentence without parole for four counts of sexual battery was deemed not excessive because the defendant was the victims’ teacher and had betrayed the trust placed in him by students and parents).
 

 Cases which are comparable to the defendant’s case include
 
 State v. Crabtree,
 
 22,061 (La.App. 2 Cir. 10/31/90), 569 So.2d 0646 (defendant’s twelve year sentence for molesting his daughter was result of a plea agreement which spared him mandatory life sentence for more serious offense);
 
 State v. Bradham,
 
 94-71 (La.App. 5 Cir. 5/31/94), 638 So.2d 428 (defendant convicted of indecent behavior with seven and ten year old victims and sentenced to fifteen years). In the present case, the jury convicted the defendant of abusing I.B.; however the court also took into account the defendant’s acts against C.Y., which demonstrated his propensity for sexually as-saultive behavior toward young girls. In
 
 State v. Mansell,
 
 43,899 (La.App. 2 Cir. 2/25/2009), 4 So.3d 277, a first time offender’s sentence of twelve years for indecent behavior with a juvenile under the age of thirteen was not excessive.
 

 Considering the facts and circumstances surrounding this case, the defendant’s sentence is not excessive. This assignment has no merit.
 

 For the foregoing reasons, we affirm the defendant’s conviction and sentence.
 

 AFFIRMED
 

 BONIN, J., concurs in the result only.
 

 [1]
 

 . Throughout the record of these proceedings the defendant's name is spelled as "Scoggin” or "Scoggins”.
 

 [2]
 

 . To protect the privacy of the victim and her parents, the victim will be referred to by her initials, I.B. and her parents by their initials, R.B. and B.B. Also, C.Y., another of the defendant’s victims, will be identified by her initials and her parents, G.Y. and S.Y., will be referred to by their initials.
 

 [3]
 

 .
 
 State of Louisiana v. Matthew Scoggins,
 
 unpub., 2009-1563 (La.App. 4 Cir. 11/18/2009).
 

 [4]
 

 . State of Louisiana
 
 v.
 
 Matthew Scoggins,
 
 2009-2489 (La. 11/18/2009), 25 So.3d 779.
 

 [5]
 

 . The defendant and his family were also members of the Trinity Episcopal Church congregation.
 

 [6]
 

 . G.Y. identified the statement he and his wife prepared, and the Assistant District Attorney read the statement to the jury.
 

 [7]
 

 . See
 
 State v. Lee,
 
 2001-2082, pp. 6-7 (La.App. 4 Cir. 8/21/02), 826 So.2d 616, 623.
 

 [8]
 

 . La. C.E. art. 403 provides:
 

 Art. 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time
 

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
 

 [9]
 

 .
 
 State v. Rose,
 
 2006-0402 p. 12, 949 So.2d at 1243, n. 3:
 

 This court has not yet addressed the extent to which Article 1104 and the burden of
 
 *153
 
 proof required by the federal rules, as interpreted in
 
 Huddleston v. United States,
 
 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), has affected the burden of proof required for the admissibility of other crimes evidence.
 
 State v. Jacobs,
 
 99-0991, p. 26 n. 15 (La.5/15/01), 803 So.2d 933, 952 n. 15;
 
 State v. Cotton,
 
 00-0850, p. 11 n. 3 (La. 1/29/01), 778 So.2d 569, 578 n. 3. In the instant case, we need not reach the issue of the applicable burden of proof because we find that the State satisfied its burden under either the clear and convincing evidence standard or the preponderance of the evidence standard.
 

 [10]
 

 . In
 
 United States v. Enjady, supra,
 
 defendant was convicted of aggravated sexual abuse. During trial, the State introduced evidence under Federal Rule 413 of a prior rape defendant allegedly committed through the testimony of the alleged victim. The defendant appealed claiming prejudicial error in the admission of the evidence of the prior rape. The United States Tenth Circuit found the trial court properly ruled the evidence admissible under Rule 413 and properly considered Rule 403 in balancing the probative value of the evidence against prejudice to the defendant. The court noted "the exclusion of relevant evidence under Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence 'normally' should be admitted.”
 
 United States v. Enjady,
 
 134 F.3d at 1432.