ROSEMARY LEDET, Judge.
| TThis is a criminal appeal. The defendant, David Henry, appeals his conviction and sentence for aggravated and forcible rape. The principal issue raised on appeal is whether the trial court erred in allowing the State to introduce evidence of a prior sex crime — a 1978 conviction for attempted aggravated rape — under La. C.E. art. 412.2. Finding no error, we affirm.

STATEMENT OF THE CASE

On November 5, 2009, Mr. Henry was indicted on two counts: Count One was for aggravated rape, a violation of La. R.S. 14:42; and Count Two was for forcible rape, a violation of La. R.S. 14:42.1. On November 13, 2009, he was arraigned and pled not guilty. Following a three day trial, a twelve person jury found Mr. Henry guilty as charged on both counts. On April 8, 2011, the trial court sentenced Mr. Henry on Count One to life imprisonment at hard labor and on Count Two to forty years at hard labor. The trial court ordered that both sentences be served without benefit of parole, probation, or suspension of sentence. On the | .¿same date, the trial court denied Mr. Henry’s motion to reconsider the sentence and granted his motion for appeal. This appeal followed.

STATEMENT OF THE FACTS

Mr. Henry was tried and convicted for the aggravated rape of R.C.[1] between March 1, 2007 and May 4, 2008, and the forcible rape of R.C. between May 5, 2008 and June 15, 2009. At the time of trial (April 2011), the victim, R.C., was fifteen years old and in the eighth grade. According to R.C., in 2008, she lived in Algiers with her mother, her two brothers, and Mr. Henry, who she referred to as “Mr. David.” R.C. identified Mr. Henry in court. She testified that he was her mother’s boyfriend. She further testified that he forced her to have sex with him on multiple occasions.
R.C. testified that the first rape occurred in 2008 when she was twelve years old; she stated that it occurred before her birthday (May 5th) but after Mardi Gras. She explained that it occurred while her mother was at work. She further explained that Mr. Henry came into her room, pulled her pants down, got on top of her, and put his penis in her vagina. She started crying and screaming for him to stop. He told her to shut up and did not stop until white stuff came out of his penis. He got off her, told her to shut up, and instructed her not to tell anyone. He threatened that if she told anyone he would kill her, her mother, and her brothers.
R.C. testified that the last rape occurred when she was fourteen years old; however, she did not recall the details of that occurrence. She further testified that *1019 laMr. Henry raped her every time her mother or her brothers were gone. When asked how often her mother and her brothers were gone, she testified that her mother “would go to work Monday through Friday at four o’clock in the morning and my brothers would sleep by Mr. Dave’s because they walked to school.” R.C. denied ever consenting to have sex with Mr. Henry.
In July 2009, R.C. went to Atlanta, Georgia to visit her older sister, I.F., for about a month. R.C. testified that she made the trip to Atlanta because she wanted to get away from Mr. Henry and “[t]he raping.” While she was in Atlanta, R.C. noticed that her stomach was getting big and that she was throwing up every morning. Likewise, her older sister, I.F., also noticed that R.C. was gaining weight in her middle section, that R.C. often was sick to her stomach, and that there was vomit residue in the bathroom that R.C. used. Although I.F. suspected that R.C. might be pregnant, I.F. did not believe that R.C. was having sexual relations.
In mid-August 2009 when I.F. brought R.C. back to New Orleans for school, I.F. and her cousin tricked R.C. into giving a urine sample; they told R.C. that the cousin needed it to submit for an employment drug screening. After they obtained the urine sample, they performed two home pregnancy tests that both came back positive. When confronted with the test results, R.C. began crying. R.C. stated that she did not want to be pregnant, that it was not her fault, and that her mother’s boyfriend had been raping her. I.F. questioned R.C. about the rapes and asked her if she was telling the truth; R.C. replied: ‘Tes, my mama’s boyfriend had been raping me.” R.C. also told I.F. that she had never told anyone about the rapes | ¿because she was scared. R.C. explained that the mother’s boyfriend had threatened to kill her and her mother if she told anyone. I.F. did not recall whether R.C. identified the boyfriend by name. After learning about the rapes, I.F. contacted her Uncle Melvin, who everyone in the family went with their problems. Her uncle met I.F. and R.C. at their mother’s (S.C.’s) residence, and they informed their mother, S.C., that R.C. was pregnant. R.C. told her mother: “David has been raping me.”[2]
After disclosing to S.C. that she had been raped, R.C. talked to both the police and physicians. On August 11, 2009, Detective Jounay Ross, who was employed as a child abuse detective for the New Orleans Police Department (“N.O.P.D.”), was designated the lead investigator on R.C.’s case. Detective Ross referred R.C. to the Child Advocacy Center for interviews, and she monitored the interviews. On August 12, 2009, Daniel Dooley, a forensic examiner for the Child Advocacy Center, conducted a forensic interview of R.C. He identified a piece of paper on which R.C. wrote the word “D-I-C-K” during the interview because she did not want to say that word out loud.
Dr. Jamie Jackson, who was qualified as an expert in child abuse pediatrics, testified that she was employed by the Child Advocacy Center. Dr. Jackson was present in October 2009 when Dr. Yameka Head, the attending physician, examined R.C. Dr. Jackson testified that R.C.’s history was consistent with that of 15a sexual *1020 ly abused child. R.C. related that her mother’s boyfriend, Mr. Henry, stuck his thing in her private part. Dr. Jackson confirmed on cross examination that other than being pregnant there were no physical findings to substantiate the sexual abuse allegations. Based on an ultrasound that was performed, it was determined that R.C. was between twenty-two and twenty-three weeks pregnant, which excluded the possibility of her having been impregnated during July or August 2009 when she was visiting her sister in Atlanta.
In November 2009, R.C. gave birth to a baby girl. A few days after the baby was born, Detective Ross came to the hospital and obtained buccal swabs from the inner jaw of R.C. and her baby. Detective Ross explained that she enlisted a nurse to actually take the swabs because she (the detective) was ill. She thought that she might have been coming down with a cold or the flu, and she did not want to expose R.C. or her baby. A swab was also taken from Mr. Henry. Due to an apparent mislabeling of the first set of DNA samples (discussed below), Detective Ross personally took a second buccal swab from R.C. and from her baby, who by that time, had been adopted. Another sample was also obtained from Mr. Henry.
Kathryn Moyse, a DNA analyst from Scales Biolab in Camden, Mississippi, was qualified by joint stipulation as an expert in forensic DNA analysis. Ms. Moyse testified that the first set of DNA samples from R.C., her baby, and Mr. Henry showed that R.C. was Mr. Henry’s child, but R.C.’s baby was not Mr. Henry’s child. Ms. Moyse further testified that “[ajfter the testing was completed it appeared, through conversations with the district attorney’s office, that there may | nhave been a problem with the labeling from when the samples were collected.” As a result, the lab requested that a brand new set of DNA samples be collected. In February 2010, a new set of samples were submitted and the testing was done again from scratch. Ms. Moyse testified that the testing of the second set of DNA samples established that the DNA of Mr. Henry matched that of R.C.’s baby such that it was 99.99% certain that Mr. Henry was her baby’s father.
Don Hancock, an Orleans Parish Sheriffs Office employee, testified that he oversaw operations and maintained the telecommunications systems at the jail. As part of his duties, he handled jail house telephone calls. He stated that all inmate calls are recorded, memorialized, can be copied to CD, and can be transcribed. He identified a CD of Mr. Henry’s recorded calls for the period from July 12, 2009, through September 20, 2009, and the transcript of those calls. This CD was played for the jury, and the transcript was published for the jury.[3]
N.O.P.D. Officer Joseph Pollard, who was qualified by joint stipulation as a fingerprint expert, identified the fingerprints belonging to Mr. Henry that he took in court that day. He then identified a certified copy of an arrest register and the matching certified pack from case No. 260-856. These documents showed that Mr. Henry had pled guilty in 1978 to attempted aggravated rape. Officer Pollard testified that he compared the right print from the fingerprint of Mr. Henry’s prints that he took in court that day with the fingerprints on the back of the arrest register ^connected to Mr. Henry’s prior convic *1021 tion. Officer Pollard opined that the prints matched.

DISCUSSION

ERRORS PATENT
A review of the record for errors patent reveals none.
ASSIGNMENT OF ERROR NO. 1
Mr. Henry’s first assignment of error is that the trial court erred in admitting evidence of Mr. Henry’s prior conviction for attempted aggravated rape. Before trial the State filed a notice of its intent to use evidence of similar crimes pursuant to La. C.E. art. 412.2. In that notice, the State expressed its intent to introduce evidence of Mr. Henry’s previous sex crime with a juvenile victim; to wit:
Defendant, David Henry, committed the Aggravated Rape of then 10 year old, N.M. (female, dob: 8/16/66) on July 13, 1977. Defendant subsequently plead guilty to one count of Attempted Aggravated Rape in Orleans Parish Criminal District Court, Case No. 260-856.
On October 12, 2010, the trial court granted the State’s request to introduce La. C.E. art. 412.2 evidence at trial. At trial, the State, over the defense’s objection, introduced evidence of Mr. Henry’s 1978 conviction for the July 1977 rape.[4] On appeal, Mr. Henry contends that it was an abuse of discretion to admit the “other crimes” evidence under the guise of proving his purported “lustful disposition.”
A trial court’s ruling on the admissibility of evidence will not be overturned absent an abuse of discretion. State v. Wright, 11-0141, pp. 10-11 (La.12/6/11), 79 So.3d 309, 316 (citing State v. Cosey, 97-2020 (La.11/28/00), 779 So.2d 675, 684). This same standard is applied to rulings on the admission of other crimes evidence under La. C.E. art. 404(B)(1) and evidence under La.' C.E. art. 412.2. Wright, supra.
The governing statutory provision on this issue is La. C.E. art. 412.2, which provides, in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
In order for any evidence deemed to fall within La. C.E. art. 412.2 to be admissible, it must pass the balancing test of La. C.E. art. 403, which provides: “[ajlthough relevant, evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.”
Addressing the meaning of the “unfair prejudice” component of the balancing test, the Louisiana Supreme Court in State v. Rose, 06-0402, p. 13 (La.2/22/07), 949 So.2d 1236, 1244, noted that “[a]ny inculpa-tory evidence is ‘prejudicial’ to a defendant, especially when it is ‘probative’ to a high degree.” Id. (citing State v. Germain, 433 So.2d 110, 118 (La.1983)). The Supreme Court further noted that “[a]s *1022 used in the balancing test, ‘prejudicial’ limits the introduction of probative evidence of prior misconduct only when it is unduly and Inunfairly prejudicial.” Id.[5] In this context, unfair prejudice thus means “the offered evidence has ‘an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.’ ” George Pugh, Robert Force, Gerard Rault, & Kerry Triche, HANDBOOK ON LOUISIANA EVIDENCE LAW, Author’s Note (3), La. C.E. art. 403, p. 380 (2011)(citing the Advisory Committee’s Note to Federal Rule 403). A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. State v. White, 09-0025, p. 9 (La.App. 4 Cir. 9/16/09), 22 So.3d 197, 204.
In this case, Mr. Henry argues that the other crime evidence was “so stale as to have greatly diminished any probative value it may have originally provided.” He emphasizes that he was only sixteen years old — a child himself — at the time of the prior crime. He thus submits that the prior crime was a criminal sexual act committed by one child against another, and did not, thirty years thereafter, serve to indicate his lustful disposition toward children. The State counters that Mr. Henry erred in focusing his argument solely on the “lustful disposition toward children” aspect of La. C.E. art. 412.2. The State points out that La. C.E. art. 412.2 also provides that “evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior ... may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in |inArticle 403.” The State argues that Mr. Henry failed to establish prejudice based on either the remoteness in time or his youth at the time of the prior offense.
Summarizing the jurisprudence addressing the lack of a temporal limit on sex crimes admissible under Article 412.2, a commentator states:
The legislature did not address a temporal limitation for sex crimes in Article 412.2. Under current Louisiana jurisprudence, the acts that are admissible under Article 412.2 could occur prior to or subsequent to the charged crime. Moreover, the courts have not set a limit on the number of years a sex crime could have occurred before or after the charged crime. The age of the prior sex crime is a consideration for the trial judge when he does the 403 balancing test to determine whether the prior crime should be admitted. However, it is only one factor to be considered and prior sex crimes that occurred several years earlier have not been excluded because of the length of time.
Bobby Harges & Russell Jones, LA. PRAC. EVIDENCE, Art. 412.2, n. 28 (2012 ed.)(citing State v. Buekenberger, 07-1422 (La.App. 1 Cir. 2/8/08), 984 So.2d 751; and State v. Willis, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365). Accordingly, “the fact that the prior sex offenses occurred many years before trial is not significant as the legislature did not set forth a time limitation in Article 412.2.” Willis, 05-218 at p. 31, 915 So.2d at 388.
Likewise, this court in State v. Scoggins, 10-0869 (La.App. 4 Cir. 6/17/11), 70 So.3d 145, writ denied, 11-1608 (La.2/10/12), 79 So.3d 1033, rejected the argument that the remoteness in time of a prior sex offense *1023 rendered it inadmissible. In Scoggins, supra, the defendant was convicted in November 2009 of indecent behavior with a juvenile for touching his niece’s vagina multiple times starting when she was seven years old. The offenses came to light in October 2008. Pursuant to La. C.E. art. 412.2, the State introduced the testimony of a | ^nineteen-year-old female whose family had been friends with the defendant’s family; the female often spent the night at the defendant’s home when she was eight or nine years old. During one of those sleep overs, the female awoke to find the defendant with his hand in her pants, touching her vagina. When she was older and took sex education classes, the female realized that what the defendant had done to her was wrong. In 2008, she told her parents about it.
On appeal, the defendant in Scoggins argued that the single instance of his as-saultive behavior on the female family friend that occurred ten years before the crime for which he was being tried was so remote in time as to have had no probative value. Rejecting that argument, this court reasoned that “[rjemoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect.” Scoggins, 10-0869 at pp. 18-14, 70 So.3d at 154 (citing State v. Jackson, 625 So.2d 146 (La.1993)). We also noted the general rule that “a lapse in time will go to the weight of the evidence, rather than to its admissibility.” Id.
A similar issue regarding the remoteness of prior sex offenses was addressed is State v. Driggers, 554 So.2d 720 (La.App. 2d Cir.1989).[6] In that case, the defendant was charged with four counts of indecent behavior with a juvenile and two counts of aggravated sexual battery; all of the charges involved the defendant’s then six-year-old granddaughter. At trial, the State introduced testimony from six other victims that they were sexually molested when they were 1 ^between the ages of four and thirteen years old; and the crimes occurred between seven to twenty-six years before the charges. On appeal after his convictions, the defendant in the Drig-gers case argued that the probative value of the prior crimes evidence was outweighed by its prejudicial effect. Rejecting that argument, the appellate court noted while the prior crimes evidence might have appeared remote in time in some instances, the incidents were all within the same time period in terms of the victims’ lives, given that all were essentially prepubescent. The appellate court also noted that, under the peculiar circumstances of the case, “the mere passage of time, without more, does not require their exclusion. Other cases involving the same or similar circumstances should be left to the reasonable discretion of district courts when those cases arise.” Driggers, 554 So.2d at 727.[7]
*1024 The instant case presents unusual circumstances given the difference between Mr. Henry’s age at the time of the prior offense, sixteen years old, and at the time of the instant offenses, approximately forty-six to forty eight years old. Mr. Henry was six years older than the victim of the prior offense, but forty-one to forty-three years older than the victim of the instant offenses. Another difference is that the prior victim was ten years old at the time of the offense; the victim in the instant case was fourteen and fifteen years old at the time of the instant offenses. 11sThe first offense was a single incident; the instant offenses occurred on an unknown number of times. (As noted earlier, R.C. testified that Mr. Henry raped her whenever her mother or her brothers were out of the house, and she said he mother left for work at 4:00 a.m. on Monday through Friday.) The victim in the prior offense was someone who resided near the then sixteen-year-old Mr. Henry, but she had never talked to him. Here, the victim of the instant offenses resided with Mr. Henry; Mr. Henry was the victim’s mother’s boyfriend.
Despite the age differences between the parties to the prior offense and the instant offenses, and the significant lapse of time between the two offenses, it cannot be said, considering all of the facts and circumstances of this case, that the trial court abused its discretion in concluding that the probative value of the prior offense was not substantially outweighed by its prejudicial effect.
Regardless, the erroneous admission of other crimes evidence is subject to a harmless error analysis. Scoggins, supra. Harmless error exists where the guilty verdict actually rendered was “surely unattributable” to the error. State v. Higginbotham, 11-0564, p. 3 (La.5/6/11), 60 So.3d 621, 623. The prior and instant offenses were clearly distinct. Mr. Henry concedes that the State’s case against him was very strong, including DNA evidence establishing he is the father of R.C.’s child. According credit to the good sense and fairmindedness of the jury, the guilty verdicts rendered in the instant case were surely unattributable to any error by the trial court in admitting evidence of the prior offense. This assignment of error lacks merit.
^ASSIGNMENT OF ERROR NO. 2
Mr. Henry’s second assignment of error is that the trial court erred in denying his motion for a mistrial based on the prosecutor’s alleged improper rebuttal argument. During rebuttal argument the following occurred:
MR. GUILLORY:
[[Image here]]
This isn’t — And this damn sure ain’t no immaculate conception. This girl got pregnant because this monster, this sexual predator—
MR. SAUVIAC:
I object judge.
MR. GUILLORY:
—this deviant sexual being—
MR. SAUVIAC:
Inappropriate close. Inappropriate close, Judge, and he knows it. Move to strike and mistrial.
THE COURT:
Denied.
The general rules governing closing and rebuttal argument are set forth in La. C.Cr.P. art. 774. The scope of closing argument shall be confined to the evidence admitted, the lack of evidence, conclusions of fact that the State or the defendant may draw therefrom, and the law applicable to the case. La.C.Cr.P. art. 774. Closing argument shall not appeal to prejudice. *1025 Id. The state’s rebuttal shall be confined to answering the argument of the defendant. Id.
Prosecutors may not resort to argument involving personal experience or turn argument into a plebiscite on crime. State v. Fortune, 10-0599, p. 8 (La.App. 4 Cir. 12/22/10), 54 So.3d 761, 766; State v. Jackson, 08-0286, p. 10 (La.App. 4 Cir. 4/29/09), 11 So.3d 524, 532-33. Prosecutors, however, have wide latitude in choosing closing argument tactics. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036; Jackson, 08-0286, p. 10-11, 11 So.3d at 533. A trial court has broad discretion in controlling the scope of closing arguments. Casey, supra; State v. Jones, 10-0018, p. 9 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 833. Even when the prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict. State v. Wiltz, 08-1441, p. 6 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, 558; State v. Harvey, 08-0217, p. 4 (La.App. 4 Cir. 5/13/09), 12 So .3d 496, 499. Even when the prosecutor’s statements are improper, a reviewing court should accord credit to the good sense and fairmindedness of the jury that heard the evidence. Harvey, supra.
Upon motion of a defendant a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it “impossible for the defendant to obtain a fair trial.” La.C.Cr.P. art. 775. However, a “[m]istrial is an extreme remedy and, except for instances in which the mandatory mistrial provisions of La. C.Cr.P. art. 770 are applicable, should only be used when substantial prejudice to the defendant is shown.” State v. Burton, 09-0826, p. 10 (La.App. 4 Cir. 7/14/10), 43 So.3d 1073, 1080 (quoting State v. Castleberry, 98-1388, p. 22 (La.4/13/99), 758 So.2d 749, 768): A trial court has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. State v. Leonard, 05-1382, p. 11 (La.6/16/06), 932 So.2d 660, 667. A trial court’s decision as to 1 ^whether actual prejudice has occurred and whether a mistrial is warranted will not be overturned on appeal absent an abuse of that discretion. State v. Maxwell, 11-0564, p. 25 (La.App. 4 Cir. 12/21/11), 83 So.3d 113, 128.
Considering the circumstances of the present case and according credit to the good sense and fairmindedness of the jury, it cannot be said that one would be thoroughly convinced that the rebuttal argument complained of either improperly influenced the jury or contributed to the verdict. The comments by the prosecutor were not so prejudicial as to deprive Mr. Henry of his right to a fair trial. Thus, it cannot be said that the trial court abused its discretion in denying Mr. Henry’s motion for mistrial. This assignment of error lacks merit.

DECREE

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED

. Due to the nature of the offense, we use the initials of the minor victim, the victim’s mother, and the victim’s sister.

. At trial, S.C. testified that R.C. was born on May 5, 1995; and she identified R.C.’s birth certificate. According to S.C., Mr. Henry was her former co-worker. S.C. confirmed that Mr. Henry had lived with her; however, she could not recall the exact years that he had lived with her. When asked whether R.C. had ever told her that she had been raped, S.C. replied in the affirmative.

. Although the appeal record contains neither the CD nor the transcript, the State, in closing argument, emphasized that the transcript includes a conversation between Mr. Henry and his mother in which "Mr. Henry’s mother asks him, point blank, ‘Did you mess with that girl?’ And what does he say, 'Yes, I messed with her, but it was only once.’ ”

. The prior offense occurred when Mr. Henry was sixteen years old. The victim claimed that Mr. Henry and his ten year old brother grabbed her as she walked past their residence, pulled her inside, and that each raped her.

. See also Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ("The term ‘unfair prejudice,’ as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.”).

. Although State v. Driggers, 554 So.2d 720 (La.App. 2d Cir.1989), was decided before the Louisiana Legislature enacted La. C.E. art. 412.2, the decision in that case is consistent with the subsequently enacted article.

. In finding that the probative value outweighed the prejudicial effect of the evidence, the appellate court in Driggers further reasoned:
[T]he continuity and consistency with which the other crimes occurred indicate a pattern of behavior and not merely one or two isolated incidents. The significance of the other crimes lies as much in what motivates defendant to act as in what occurred. His apparent tendency to partake in pedo-philic activities is of long standing and appears to be firmly entrenched.
554 So.2d at 727. The appellate court still further reasoned that all of the victims of the prior offenses were relatives and neighbors of the defendant, which was a factor contributing to the pattern of the defendant’s conduct.