STATE OF LOUISIANA     *     NO. 2021-KA-0118

VERSUS     *

    COURT OF APPEAL

KENNETH J. SESSION     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 531-099, SECTION "DIVISION D"
Judge Kimya M Holmes,
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Tiffany Gautier Chase)

**BELSOME, J., CONCURS WITH REASONS**

Meghan Harwell Bitoun
LOUISIANA APPELLATE PROJECT
P.O. Box 4252
New Orleans, LA 70178--4252

    COUNSEL FOR DEFENDANT/APPELLANT


Jason Rogers Williams
DISTRICT ATTORNEY
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

G. Benjamin Cohen
Chief of Appeals, DISTRICT ATTORNEY
619 S. White Street
New Orleans, LA 70119

David B. LeBlanc
ASSISTANT DISTRICT ATTORNEY
Appeals Division
619 S. White Street
New Orleans, LA 70119

COUNSEL FOR APPELLEE, THE STATE OF LOUISIANA

**AFFIRMED**
**DECEMBER 14, 2021**

*TGC*
*DLD*

This is a criminal appeal. The defendant, Kenneth Session (hereinafter "defendant"), seeks review of his conviction and sentence for sexual battery of a victim under the age of thirteen. For the reasons that follow, we affirm.

## PROCEDURAL HISTORY

On October 31, 2016, the State of Louisiana (hereinafter "the State") filed a bill of information charging defendant with molestation of a juvenile under the age of thirteen, a violation of La. R.S. 14:81.2, and sexual battery of a victim under the age of thirteen, a violation of La. R.S. 14:43.1(C)(2). At arraignment, defendant pled not guilty to both counts. The case proceeded to trial on November 26, 2018, but ended with a hung jury. The State chose to try defendant again, on only the count of sexual battery of a victim under the age of thirteen.

Defendant was found guilty by a unanimous jury following his second trial. On February 5, 2020, defendant was sentenced to fifty years imprisonment at hard labor with credit for time served. The court ordered the defendant to serve thirty years without the benefit of probation, parole, or suspension of sentence. On that

1

same date, the trial court denied defendant's motion to reconsider sentence and granted his motion for appeal.

## STATEMENT OF THE FACTS

Defendant was tried and convicted for the sexual battery of C.R., his niece.[1] C.R., aged eighteen at the time of trial but eight years old when the abuse occurred, described the incidents during which defendant abused her in detail at trial. She disclosed the abuse to a friend, who told C.R.'s mother. C.R. also testified that she had initially denied the allegations when asked about them by her mother and grandmother.

C.R.'s cousin ("witness 2"), twenty-three years old at the time of trial, testified pursuant to La. C.E. art 412.2 that defendant had raped her when she was seventeen, after he discovered her with a boy against "house rules."

Another relative ("witness 3"), also provided evidence of defendant's lustful disposition, describing two incidents. During the first incident, defendant forcibly removed her bedcovers when she was spending the night with witness 2. On the second, defendant raped her when she was twelve years old and babysitting defendant's children among others. Witness 3 reported the incident when she was sixteen years old and the offense was prosecuted in Jefferson Parish. Witness 3's boyfriend also testified, confirming that she had reported the rape to him about a year after it occurred.

A friend of C.R.'s ("witness 4") corroborated her testimony. Witness 4 testified that she and C.R. discussed the allegations made by witness 3, which had

---

[1] In accordance with La. R.S. 46:1844(W)(1)(a), to keep confidential the identities of the persons who were minors at the time of the offenses, initials have been used in place of their names.

been made public by that time, and that C.R. then tearfully told her that defendant had molested her too. Witness 4 informed C.R.'s mother, who contacted police.

Dr. Anne Troy, qualified as an expert in the field of child sexual abuse, interviewed C.R. Nothing during the interview suggested to the expert that C.R. had been untruthful when she provided her account of abuse.

Defendant's wife testified on his behalf. She admitted that witness 3 had accused defendant of molesting her but maintained that she later retracted those allegations. She also claimed that all the State's fact witnesses had lied about her husband's conduct. She denied drinking with defendant before her night shift working at a Bridge City correctional facility. However, her testimony was impeached by rebuttal testimony from her sister, suggesting that defendant would be left alone with witness 3 at night, when his wife went to work.

## ERRORS PATENT

A review of the record reveals no errors patent.

## DISCUSSION

### Evidentiary Rulings

*Assignment of Error No. 1: The Admission of Witness 2's Testimony*

In his first assignment of error, defendant avers that the trial court erred when it admitted other crimes evidence whose probative value was outweighed by its prejudicial effect, specifically witness 2's testimony that defendant raped her when she was seventeen. Witness 2 did not testify during defendant's first trial and the State filed a notice of intent to introduce her testimony as evidence of similar crimes pursuant to La. C.E. art. 412.2. After a hearing, the trial court determined that the probative value of witness 2's testimony outweighed its

3

prejudicial effect.[2]  We review the trial court's ruling under an abuse of discretion standard.  *State v. Wright*, 2011-0141, pp. 10-11 (La. 12/6/11), 79 So.3d 309, 316.

Defendant argues that the probative value of the evidence is outweighed by the possibility of prejudice to him because the incident involving C.R. differs from that involving witness 2.  Defendant asserts that while C.R. was eight years old when he inappropriately touched her, witness 2 was seventeen years old when her alleged rape occurred.  Defendant cites to *State v. Parker,* 42,311, p. 13-14 (La. App. 2 Cir. 8/15/07), 963 So.2d 497, 507, wherein the Second Circuit determined that evidence of sexual misconduct with adults was inadmissible in connection with a charge of sexual misconduct with a minor.  As in *Parker*, defendant maintains that witness 2's testimony should have been found inadmissible given her age when she was raped.  Defendant contends that another distinction between the two incidents is that while the incident with C.R. was premeditated, the incident with witness 2 was "an isolated instance of opportunity." Defendant also questions the reliability of witness 2's testimony regarding her rape, as she did not report the alleged offense until six years after it transpired.

The governing statutory provision regarding the admission of "prior bad acts" evidence is La. C.E. art. 412.2(A), which provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

---

[2] The trial court also ruled that another incident, where defendant was accused of inappropriately touching C.R. over her clothing in Jefferson Parish, was inadmissible.

4

In order for any evidence within the parameters of La. C.E. 412.2 to be deemed admissible, it must be analyzed through the balancing test of La. C.E. art. 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time."

Our Louisiana Supreme Court, in addressing the meaning of "unfair prejudice," has noted that "[a]ny inculpatory evidence is 'prejudicial' to a defendant, especially when it is 'probative' to a high degree." *State v. Rose*, 2006-0402, p.13 (La. 2/22/07), 949 So.2d 1236, 1244. The Court further noted that "[a]s used in the balancing test, 'prejudicial' limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial." *Id.* Unfair prejudice, in this context, results when the evidence being offered has an undue tendency to suggest a decision by the trier of fact on an improper basis, which is commonly an emotional one. *State v. Henry,* 2011-1137, p. 9 (La.App. 4 Cir. 10/24/12), 102 So.3d 1016, 1022 (citations omitted).

Article 412.2 has been consistently applied to allow evidence of prior uncharged misconduct to be introduced in cases where a defendant has engaged in sexually inappropriate behavior, similar to the charged misconduct, with minor individuals. *Parker,* 42,311, pp. 13-14, 963 So.2d. at 507. However, La. C.E. art. 412.2 "does not limit the admissibility of prior acts only to those identical or similar in nature." *Wright,* 2011-0141, pp. 9-10, 79 So.3d at 315. In addition, "the fact that the prior sex offenses occurred many years before trial is not significant as the legislature did not set forth a time limitation in Art. 412.2." *Henry,* 2011-1137, p. 10, 102 So.3d at 1022 (citation omitted).

5

Witness 2 was seventeen, and thus, like C.R., a minor when she was raped by defendant. The evidence indicates that in contrast to defendant's assertion, his sexual misconduct with witness 2, like that with C.R., was premeditated: defendant threatened to have intercourse with witness 2 and later followed through with his threat. Additionally, the fact that witness 2 did not report defendant's behavior for six years was known to the jury, and presumably the jury evaluated this information when it assessed her credibility. Considering all the facts and circumstances of this case, we find that the trial court did not abuse its discretion in allowing witness 2 to testify. The probative value of her testimony is not outweighed by its prejudicial effect.

We also note that even if the trial court erred in admitting the evidence at issue, the error is subject to the harmless error analysis. *See Chapman v. California*, 386 U.S.18, 87 S.Ct. 824, 17 L.Ed.2d. 705 (1967). In the harmless error analysis, "[t]he inquiry…is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *State v. Trung Le*, 2017-0164, p. 20 (La.App. 4 Cir. 4/11/18), 243 So.3d 637, 657-58.

The State's case against defendant was substantial and included the testimony of five fact witnesses along with that of an expert who opined as to C.R.'s truthfulness. In this situation, we also find the guilty verdict rendered by this jury was "surely unattributable" to any error by the trial court in admitting witness 2's testimony, as the record before this Court overwhelmingly established defendant's guilt. This assignment of error is without merit.

*Assignment of Error No. 2:  The Admission of "Prior Bad Acts" Evidence*
*without Prior Notice to Defendant*

In defendant's second assignment of error, he asserts that the trial court erroneously admitted testimony regarding prior bad acts for which notice had not been given.  This occurred when the trial court allowed the State to elicit testimony from C.R. on redirect examination.   Defendant avers that the trial court erred in ruling that defense counsel "opened the door" to C.R.'s redirect testimony and admitting this evidence.  Defendant argues that C.R.'s statement should have been ruled inadmissible as it was unresponsive to defense counsel's question.

At trial, the testimony defendant complains of was elicited as the result of the following colloquy during the defense's cross-examination of C.R.:

> Q.   Did anybody […] ask you any […] kinds of questions about [defendant behaving inappropriately]?
> A.   My grandma asked me…But she asked me like a while ago.
> Q.   You said your grandmother?
> A.   She had heard something else too.  So that's why she asked me.

On redirect examination by the State, the following exchange occurred:

> Q.   [D]efense counsel asked you about your grandmother.  And you had mentioned that your grandmother had asked you if [defendant] had done anything inappropriate with you; is that correct?
> A.   Yeah.
> Q.   And you mentioned that your grandmother said that he had been doing – that she had told you that he had been doing inappropriate things?
> A.   Yes.
> Q.   What were those things and who were they to?
> A.   She told me that he had –

Defense counsel then objected and argued that the State was attempting to introduce evidence that had been ordered excluded under La. C.E. art. 412.2.  The State responded that the defense had opened the door to the evidence through its

7

cross-examination and the court overruled the objection on that basis. C.R. then continued,

> She told us that she heard about him doing something to somebody on his side of the family, probably like one of his nieces or I don't know something like that. And she said she had heard about something like that. So she asked me.
> Q. One of [defendant's] nieces?
> A. I don't know if it was his niece or I don't know who it was.
> Q. Do you know what [defendant] had done to that person?
> A. She said like he touched her inappropriately or like he told her something inappropriate or something like that.

La. C.E. art. 412.2(B) provides that when the State intends to offer evidence of other sexually assaultive behavior or acts which indicate a lustful disposition toward children at trial, it shall provide reasonable notice in advance of trial of the nature of any such evidence. A well-settled exception to this rule occurs when one side has gone partially ("opened the door") into such a matter on examination of a witness; thereafter, the other side may go into it fully during its own examination of the witness. *See State v. Edwards,* 420 So.2d 663, 675 (La. 1982). While our Louisiana Supreme Court has ruled that when a witness testifies to information which is unresponsive to an examiner's question, that unresponsive information cannot be said to have "opened the door" to otherwise inadmissible evidence. *See State v. Davis,* 351 So.2d 771, 773 (La. 1977). In the case *sub judice*, defense counsel asked C.R. on cross-examination whether anyone had questioned her about defendant's past sexual conduct. C.R. responded that her grandmother had. The defense then asked *again* whether it was her grandmother who had spoken to her. C.R. supported her statement that her grandmother had questioned her about defendant by explaining why her grandmother had done so. We find that C.R.'s testimony was responsive to defense counsel's questions; thus, the trial court did not err in admitting it.

8

We also again note that any error in admitting C.R.'s testimony was harmless. The State presented testimony from several of defendant's relatives, including C.R., witness 2, and witness 3, that defendant had sexually assaulted them. Defendant's guilty verdict was "surely unattributable" to C.R.'s testimony regarding rumors that defendant had possibly abused yet another female relative. Thus, this assignment of error is without merit.

*Assignment of Error No. 3: The Admission of*
*"Hearsay within Hearsay" Testimony*

In defendant's third assignment of error, he complains about the hearsay nature of the testimony described above. Defendant notes that C.R. testified that her grandmother heard these rumors from another, unnamed person; as such, her testimony was hearsay within hearsay. Defendant asserts that C.R.'s testimony did not fall under any exception to the hearsay rule, and that the trial court's admission of the testimony violated his fundamental right to confront a witness at trial and to test the reliability of his claims through cross examination. U.S. Const. amend. VI, XIV; La. Const. art. 1, § 16.

As a threshold matter, defendant did not object to admission of the testimony on the basis that it constituted hearsay and accordingly this issue is not properly before the Court. *See State v. Sims*, 426 So.2d 148, 155 (La. 1983) ("It is well settled that a new basis for an objection cannot be raised for the first time on appeal."); *see also State v. Boys*, 2019-0675, p. 11 (La. App. 4 Cir. 5/26/21), 321 So.3d 1087, 1100.

In any event, because defendant opened the door, an objection based on hearsay would no longer appear viable. *State v. Hankton*, 1996-1538 (La.App. 4 Cir. 9/16/98), 719 So.2d 546, 550; *State v. Moseley*, 587 So.2d 46, 55-56 (La.App.

9

2 Cir. 1991); *State v. Lapworth*, 517 So.2d 485, 486 (La.App. 1 Cir. 1987). Finally, as discussed above, even if the court erred in admitting the evidence, considering the overwhelming evidence presented of defendant's guilt, the error was harmless.

**Rulings Related to the Jury**

*Assignment of Error No. 4: The Disposition of Defendant's Batson Challenge*

In defendant's fourth assignment of error, he avers that the trial court committed legal error in addressing his motion pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d. 69 (1986), by authorizing the proffer of the State's race-neutral reasons for removing the jurors but failing to allow the proffer of defense's evidence of discriminatory intent. Defendant asserts that the trial court should have allowed him to respond to the reasons proffered by the State.

Under *Batson*, if a party exercises a peremptory challenge to exclude a prospective juror on the basis of his or her race, a violation of the Equal Protection Clause of the United States Constitution occurs. *Id.* La. C.Cr.P. art. 795(C) codifies this principle, stating in pertinent part that no peremptory challenge shall be motivated in substantial part on the basis of the race of the juror.

Generally, to establish that such a prohibited use of peremptory challenges has occurred under *Batson*, the party raising the claim must first make a *prima facie* case of purposeful racial discrimination. *See State v. Williams*, 2013-0283, p. 16 (La.App. 4 Cir. 9/7/16), 199 So.3d 1222, 1232. If a *prima facie* showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. *State v. Nelson,* 2010-1724, 2010-1726, p. 9 (La. 3/13/12), 85 So.3d 21, 29. The trial court must then determine whether the opponent of the strike carried the burden of proving purposeful discrimination. *Id.*

However, our Louisiana Supreme Court has held that once a jury has been sworn and all venire members dismissed, any *Batson* challenge is untimely. *State v. Tucker*, 2013-1631, pp. 47-49 (La. 9/1/15), 181 So.3d 590, 625-626.

In the case *sub judice*, the *voir dire* transcript indicates that after the trial court had sworn in all jurors and alternates and dismissed the remaining jury venire, defendant raised his objection under *Batson*. The trial court found the *Batson* challenge was made untimely, after it had already excused the jurors who had not been selected for service. The trial court stated that there was "no way of making a record to my knowledge, a contemporaneous record right now, of how many African-Americans were in the venire and were presented to determine what sort of proportions were in effect." Therefore, the trial court did not rule that a *prima facie* case of discrimination had been shown. However, for the purpose of protecting the record, the trial court allowed defendant to make a proffer of his *Batson* claim, and ordered the State to provide race-neutral reasons to support its peremptory challenges of those jurors.

As defendant's challenge was untimely, he did not make a *prima facie* case of purposeful racial discrimination. Defendant's *Batson* challenge failed at step one of the analysis. Therefore, the burden never shifted to the State to explain any racial exclusion. Nevertheless, the trial court allowed defendant to proffer his *Batson* challenge, and ordered the State to articulate its race-neutral peremptory challenge reasons to protect the record. The State's reasons were proffered for appellate purposes only.[3] As such, defendant had no right to respond, and we find

---

[3] *See State v. Allen*, 2003-2418, pp. 17-18 (La. 6/29/05), 913 So.2d 788, 802 ("[I]t is obvious from the district court's ruling that defense's *Batson* challenge had already failed when the State proffered its reasons for appellate purposes only, because the court clearly found no discernible pattern of discriminatory intent demonstrated. Therefore, the defense's *Batson* challenge failed

11

that the trial court did not err in failing to allow him to do so. This assignment of error is without merit.

*Assignment of Error No. 5: The Trial Court's Ex Parte Communications with Certain Jurors*

In defendant's fifth assignment of error, he argues that the trial court erred in conducting *ex parte* examinations of potential jurors. During *voir dire,* jurors 1, 8, 11, 12 and 49 approached the bench to privately communicate the reasons they could not serve on the jury to the judge. The trial court spoke to each juror off the record.[4] La. C.Cr.P. art. 831 states in pertinent part that a defendant "shall be present…at the calling [and] examination of the jury, and at any subsequent proceedings for the discharge of the jury or the juror." Defendant argues that his exclusion from this portion of *voir dire* violates his rights and entitles him to a new trial.

A defendant is limited on appeal to those grounds articulated at trial, meaning he must have pointed during trial to the specific error, so that there was an opportunity for the trial court to make the proper ruling and prevent or cure that error. *State v. Baker*, 582 So.2d 1320, 1336 (La.App. 4 Cir. 5/30/91). Without a contemporaneous objection at trial, the appellate court will not consider an assignment of error, raised for the first time on appeal. *Trung Le,* 2017-0164, p. 18, 243 So.3d at 656.

The *voir dire* transcript reflects that no contemporaneous objection was urged by defendant at the time the trial court spoke to these jurors. As defendant

---

at step one of the analysis, thus the burden never shifted to the prosecution to explain the racial exclusion.")

[4] None of these jurors were chosen to serve.

lodged no contemporaneous objection, we find that this alleged error was not preserved for appellate review. Thus, this assignment of error lacks merit.

*Assignment of Error No. 9: The Denial of Defendant's*
*Voir Dire Challenge for Cause*

Defendant's ninth assignment of error is that the trial court erred in denying a defense challenge for cause. The challenge was directed at prospective juror number 44 (hereinafter "Juror 44"). Defendant avers that during *voir dire*, Juror 44 revealed that she had been a victim of childhood sexual abuse and described its lingering effects. Juror 44 also stated that an individual accused of sexual assault should be "required to answer questions directly." Defendant asserts that neither the trial court nor the State rehabilitated Juror 44 after she made these statements. As such, whether she would have been able to serve as an impartial juror was never determined. Regardless, the trial court denied defendant's challenge for cause, and defendant asserts he thereafter exhausted his peremptory challenges. Defendant argues that he is therefore entitled to a new trial.

In trials of offenses punishable by imprisonment at hard labor, the defendant and the State are each entitled to twelve peremptory challenges. La. C.Cr.P. art. 799. When a defendant must use all twelve of his peremptory challenges, a trial court's erroneous ruling on a defendant's challenge for cause that resulted in the deprivation of one of those peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, and a reversal of his conviction and sentence is required. *State v. Juniors,* 2003-2425, pp. 7-8 (La. 6/29/05), 915 So.2d 291, 304. "Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and a defendant has exhausted his peremptory challenges." *Juniors,* 2003-2425, p. 8, 915 So.2d at 305. Therefore, to establish reversible error

13

regarding the denial of one of his challenges for cause, a defendant need only show that (1) he has exhausted all of his peremptory challenges, and (2) the trial court erred in refusing to grant one of his cause challenges. *Id.*

In the case *sub judice*, the transcript does not indicate that defendant exhausted all twelve of his peremptory challenges.[5] After two rounds of *voir dire*, the trial court stated that the prosecution had exercised eight total peremptory challenges, and the defense had exercised a total of five.[6] After the trial court allowed the parties to backstrike certain jurors, the State exhausted all twelve of its peremptory challenges. However, the trial court noted that the defense used only eleven peremptory challenges before a twelve-person jury was selected. As such, defendant has not shown that the first prong of the *Juniors* test was met to warrant the presumption of prejudice.

As to the second prong of the *Juniors* test, defendant also fails to meet his burden. Defendant asserts that the trial court should have granted his cause challenge under La. C.Cr.P. art. 797(2), on the ground that Juror 44 was not impartial, based upon her life experience; or alternatively, under La. C.Cr.P. art. 797(4), on the ground that Juror 44 would not have accepted the law as given to her by the court, because she wanted defendant to testify.[7]

---

[5] The trial court's minute entry of January 27, 2020 does state that defendant used twelve peremptory challenges. However, where a conflict exists between a minute entry and a transcript, the transcript controls. *State v. Fortenberry*, 2011-0022, p. 5 (La.App. 4 Cir. 7/27/11), 73 So.3d 391, 394. Further, the record contains a "Judge's List" from that same date, which shows only 11 defense peremptory challenges commemorated in handwriting by the trial court.

[6] The defense used its fourth peremptory challenge to strike Juror 44.

[7] La. C.Cr.P. art. 797 provides *in* toto:

> The state or the defendant may challenge a juror for cause on the ground that:
> (1) The juror lacks a qualification required by law;
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

However, reversal is appropriate only where it appears, upon review of the *voir dire* examination as whole, that the trial court's exercise of its discretion in denying a cause challenge has been arbitrary or unreasonable, and resulted in prejudice to the accused. *State v. Dotson*, 2016-0473, p. 17 (La. 10/18/17), 234 So.3d 34, 45. Additionally, an appellate court should accord great deference to the trial court's ruling on a challenge for cause which is necessarily based, at least in part, upon the trial court's personal observations during questioning. *State v. Mickelson*, 2012-2539, p. 12 (La. 9/3/14), 149 So.3d 178, 186-87.

The record does not support the conclusion that Juror 44 was unduly biased or could not follow the law. When asked by defense counsel whether she considered the burden of proof beyond a reasonable doubt "kind of unfair to victims or survivors of sexual assault," Juror 44 stated that the burden of proof was "perfectly attainable." After describing her work with the Me Too movement, Juror 44 was asked by defendant whether this would be prominently in her mind as she was deciding the case, and she responded that she would listen with compassion to all sides of the story. Juror 44 testified that she would not be ashamed to tell her co-workers that she found someone not guilty in a sexual assault case. She also revealed that although listening to the evidence would be difficult for her, years of therapy would assist her in being able to hear defendant's case.

---

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

Considering Juror 44's comments in the context of the *voir dire* record as a whole, and giving great deference to a ruling based in part upon the observation of Juror 44's demeanor, it does not appear that an abuse of the trial court's broad discretion occurred when it denied defendant's challenge to her service for cause. Thus, this assignment of error is without merit.

**Rulings Related to Opening Statement and Closing Argument**

*Assignment of Error No. 6: The Closure of the Courtroom*

In defendant's sixth assignment of error, he avers that the trial court erred in denying his right to a public trial by closing the courtroom during closing arguments. Defendant asserts that he is entitled to a new trial on that basis.

"In a criminal case, the accused is afforded the right to enjoy a public trial by both the United States Constitution and the Louisiana Constitution." *State v. Baumberger,* 2015-1056, p. 29 (La.App. 3 Cir. 6/1/16), 200 So.3d 817, 837, *citing* U.S. Const. amend. VI; La. Const. art. 1, § 16. In the absence of a contemporaneous objection, the defendant is foreclosed from seeking a new trial based on the fact that the courtroom was closed during counsel's closing arguments. *See State v. Loyden*, 2004-1558, p. 19 (La.App. 3 Cir. 4/6/05), 899 So.2d 166, 179 (*citing* La. C.Cr.P. art. 841).

Defendant did not make a contemporaneous objection at trial to the courtroom closure. On this basis alone, defendant's assignment of error is meritless. However, in addition, the record does not establish that the trial court closed the courtroom to the public during the closing arguments in defendant's case. There is no evidence that the trial court prevented anyone from observing the closing arguments. Instead, it directed that the doors be closed during their duration to prevent individuals from coming in and going out, as a courtesy to the

lawyers on both sides.  Anyone who wished to observe the entirety of the arguments was free to do so.  Thus, we find this assignment of error without merit.

*Assignment of Error No. 7:  The Disposition of Defendant's*
*Objections During Opening Statement*

In his seventh assignment of error, defendant avers that the trial court erred in overruling the defense objection to prejudicial remarks during the prosecutor's opening statement.  Defendant asserts that the trial court's failure to sustain his objection to the prosecution's comments entitles him to a new trial.

"The trial judge has broad discretion in controlling the scope of the opening and closing arguments.  However, even if the prosecutor exceeds those bounds, the court [should] not reverse a conviction if not 'thoroughly convinced' that the argument influenced the jury and contributed to the verdict."  *State v. Hollins*, 2011-1435, pp. 37-38 (La.App. 4 Cir. 8/29/13), 123 So.3d 840, 866 (internal citations omitted).  "[M]uch credit should also be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial court that the arguments of counsel are not evidence."  *State v. Martin*, 1993-0285, p. 18 (La. 10/17/94), 645 So.2d 190, 200.

In its opening statement, the State referred to the fact that defendant did not have many supporters in the courtroom.  Specifically, the State pointed out that although defendant has several daughters, "not one of them stood by him."

The comment during the opening statement was not inaccurate to the extent that the only witness who testified on defendant's behalf was his wife.  Thus, considering the evidence presented for the jury's consideration after opening statement and according credit to the "jury's good sense and fairmindedness," we

17

are not "thoroughly convinced" that the State's declaration about the absence of support from defendant's daughters during its opening statement influenced the jury such that it contributed to the verdict. Accordingly, we find defendant has not demonstrated that he is entitled to reversal of his conviction on this basis. The assignment of error is without merit.

*Assignment of Error No. 8: The Disposition of Defendant's Objections During Closing Argument*

In his eighth assignment of error, defendant contends that the trial court erred in overruling the defense's objection to the State's improper closing argument. Defendant argues that the State asserted facts not in evidence and improperly referred to his future dangerousness and the necessity of protecting community safety by convicting and imprisoning him. Defendant asserts that the trial court's failure to sustain his objections to these comments entitles him to a new trial.

The scope of closing argument is confined by La. C.Cr.P. art. 774 "to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant can draw therefrom, and to the law applicable to the case." Asserting facts not in evidence during closing argument has been found to be prejudicial error by Louisiana appellate courts. *See State v. Duplessis*, 457 So.2d 604 (La. 1984) Prosecutors are also discouraged from turning closing argument into a plebiscite on crime by making overt references to community sentiment. *State v. Deboue*, 552 So.2d. 355, 364 (La. 1989). However, prosecutors have wide latitude in choosing closing argument tactics. *Henry,* 2011-1137, p. 15, 102 So.3d at 1025. Even if the prosecutor exceeds the scope of La. C.C.P. art. 774, an appellate court must be thoroughly convinced that the argument influenced the jury

to the extent that it contributed to the verdict in order to reverse his conviction. *See Martin*, 1993-0285, p. 18, 645 So.2d at 200.

During closing argument, the prosecutor stated:

[Defendant] is not going to stop. He's not going to stop until someone puts a stop to him. [M]ultiple lives of multiple citizens will be in your hands…Because if it goes wrong up there, it will keep going wrong out there…The only entity standing between that man and that door is you. And he has made it abundantly clear he's not going to stop. So stop him or watch him walk out that door back into your city. Your choice.

The record reveals that, rather than improperly referring to community crime, the prosecutor was presenting a conclusion of fact properly drawn from the evidence when he stated that defendant's sexual predation would not stop. The evidence against defendant included the testimony of two family members he victimized in addition to C.R. Further, defendant's abuse of C.R. and witness 3 occurred on more than one occasion. We find that the trial court did not abuse its broad discretion in overruling defendant's objections to the State's closing comments.

We must also give credit to the jury's objectivity and fairmindedness in evaluating the evidence presented in this case, and consider that its members were instructed that argument is not evidence. In doing so, we are not convinced that the comments made by the State in closing argument influenced the jury and contributed to the verdict such that reversal is warranted, even if the comments exceeded their proper scope. Thus, we find that this assignment of error is without merit.

19

## DECREE

For the foregoing reasons, we affirm defendant's conviction and sentence for sexual battery on a victim under the age of thirteen.

**AFFIRMED**